EFFIE HAWKINS, RESPONDENT, v. WASHINGTON FIDELITY NATIONAL INSURANCE COMPANY, A CORPORATION, APPELLANT.—78 S. W. (2d) 543.

St. Louis Court of Appeals.   Opinion filed February 5, 1935.

*Martin Farrow* for appellant.

*John P. Griffin* for respondent.

McCULLEN, J.—This is a suit to recover the death benefit provided for in a policy of insurance on the life of Etta Shaw. Respondent, plaintiff below, was named in the policy as beneficiary to be paid $87.50 upon the death of the insured. The action was instituted before a justice of the peace. On appeal to the circuit court a trial before the court and a jury resulted in a judgment for plaintiff against defendant for the principal sum of $87.50, with $7.88 interest, $8.75 penalty and $75 attorney's fee making a total of $179.13. Defendant appeals.

It appears that a policy was issued January 25, 1926, and was lost, but defendant issued to the insured in lieu thereof a certificate certifying to the number of the policy, the date thereof, the amount of insurance, the name of the insured, and the name of the beneficiary.

Plaintiff testified that the insured was her sister; that the insured died on March 12, 1931; that in June, 1930, she obtained from the insured at her residence in St. Louis the certificate introduced in evidence; that the insured at that time was confined to her bed by sickness, and was under the care of a doctor. She further testified that the insured died of that illness; that as beneficiary, she made demand on defendant, through her attorney, for payment of the face amount of the policy, but defendant refused to pay.

It appears that the original policy was issued by the Washington Life & Accident Insurance Company whose policies were thereafter assumed by the defendant company. By means of exhibits introduced in evidence by defendant in connection with the testimony of H. S. Anchell, manager of its claim department, it was shown that the original beneficiary named in the policy was Joe Shaw, and that on March 31, 1930, upon an application made by the insured, which was signed by her mark, the name of the beneficiary was changed to Effie Hawkins, plaintiff in this case. The change of beneficiary was endorsed on the back of the certificate which was issued in lieu of the lost policy.

Defendant's witness Anchell testified that he had worked for the Washington Life & Accident Insurance Company and knew what forms of policies were issued by that company. He identified a form of policy, which was introduced in evidence as defendant's Exhibit 5, as being the specific form that was issued by the above named company on the application of the insured, and testified that all industrial policies issued by that company in 1926, on applications made at the time the application of the insured was made, contained conditions respecting indemnity for confinement to bed for illness, and forfeiture for arrears in payments of premiums which were the same as those appearing in defendant's said Exhibit 5.

For convenience, we shall hereafter refer to defendant's Exhibit 5 as the policy.

The policy provided for weekly payments of the premium, which became due on Monday of each week. It was also provided therein that a policyholder becoming in arrears more than four Mondays "forfeits all he or she may have paid to the company."

Other parts of the policy, with which we are concerned in this case, provided as follows:

"5th. Weekly benefits for sickness will only be paid for each period of seven consecutive days that the insured is by reason of illness necessarily confined to bed. . . ."

"7th. The insured will be entitled to sick or accident benefits, subject to the conditions of the policy, provided the premium is not in arrears for a period exceeding two weeks. The subsequent payment of such arrears shall not entitle the insured to benefits for

sickness or disability beginning or occurring during the period of such arrears.

"8th. That policyholders more than four Mondays in arrears shall forfeit all claims on this company, . . ."

"19th. Consent of the beneficiary shall not be requisite to surrender of this policy, or to change of beneficiary."

The evidence shows that Etta Shaw, the insured, became ill and submitted to defendant claims for sick benefits on May 4th, 16th, 20th, 26th, June 3rd and June 12th in the year 1930; that the claim dated May 4th was paid by defendant, but up to June 17, 1930, the remaining five claims had not been paid. On the last named date defendant paid to the insured the sum of $14, which was equivalent to two weeks sick benefits.

On the same date the insured executed and delivered to Henry Appt, defendant's representative, a release as follows:

"Receipt for Settlement in Full

"$14.00                                    District St. Louis
                                          "Debit No. 5 Folio . . .

"Received this 17 day of June, 1930, of the Washington Fidelity National Insurance Company, the sum of Fourteen Dollars, being full payment and compromise on policy number 395890 issued to Etta Shaw. Said policy was rendered void by reason of full settlement for this disability rheumatism & gastritis & neuritis and is hereby surrendered. The said sum is voluntarily accepted in full settlement of any and all obligations thereunder and I hereby release any and all claims that I, my heirs, executors, administrators, assigns or beneficiaries now have, or may hereafter have, against said company under, or growing out of, the issuance of the above numbered policy."

The evidence shows that notwithstanding the declaration in the above release, neither the policy nor the certificate issued in lieu thereof was surrendered.

The payment to the insured was made by a draft for $14 payable to her order, which bore on its face the following: "In settlement of claims as per receipt on back." An endorsement on the back of the draft was as follows:

"Received of the Washington Fidelity National Insurance Company $Fourteen in full payment, satisfaction, discharge, and release of any and all claims that I myself, my heirs, executors, administrators, assigns or beneficiaries now have or may hereafter have against said Company under Policy No. 395890 arising on account of injuries received or illness contracted on or about the 8th day of May, 1930, and any loss that may hereafter result from said injuries or illness.

"(Signed)  Etta Shaw."

Defendant contends that by accepting the payment referred to in the draft and in the release plaintiff was concluded as a matter of law from having any right of recovery, and, therefore, its peremptory instructions B and D, directing a verdict for defendant, should have been given and plaintiff's Instruction 1 should have been refused, or at least the court should have given defendant's Instruction I submitting to the jury, as an issue of fact, the effect of the release and the release draft.

We are unable to agree with defendant's contentions on these points. The release contained a declaration that the policy was surrendered, but the evidence shows conclusively that it was not surrendered. Furthermore, the testimony of witnesses H. S. Anchell, defendant's claim manager, and Henry Appt, defendant's field superintendent, shows clearly that it was not the intention of any of the parties to effect a surrender of the whole policy at the time the payment for sick benefits was made and the release was executed.

Mr. Anchell, testifying for defendant, said that he went to the home of the insured five or six times during her illness for the purpose of inspecting her claims for weekly benefits; that on one or two of such occasions she was in bed, but at other times she was sitting in a rocking chair. He testified that he told the insured that in view of the fact that she was not confined to her bed the company was not liable to her for such benefits, but that he would try to get the home office to permit him to make some small settlement in order to close the claim, with the understanding that there would be no further claims. He was asked whether the payment made to the insured was for claims to accrue thereafter. He answered:

"It was paid to her as a compromise settlement of any claims that may be due for or resulting from that condition."

Upon further questioning as to what the purpose of the payment was, Mr. Anchell said:

"It was paid to her with the understanding that was a compromise settlement in full for all claims pertaining to that illness or resulting from that illness."

Mr. Appt, testifying for defendant, said that Mr. Anchell sent him to see the insured about claims which she had sent in for sick benefits; that he made two or three visits to her home, on which occasions she was fully dressed and sitting up, and he told her that under the policy she would not receive payment of sick benefits because she was not confined to bed; that the insured said she understood that, and he told her the company was not liable but in order to get the matter cleared up the company "would pay her $14 for all claims she made for that disability and illness;" that he had a release form and explained to the insured what it was, telling her "that she would not be entitled to any more claims for that disability or illness;"

that the insured signed the release referred to, and that he issued and delivered to her the draft shown in evidence.

It thus appears from the testimony of defendant's own agents who handled the transaction, that the draft was paid by defendant and the release was executed by the insured with no intention on the part of either party to do anything more than to adjust and make a final settlement of the claims for sick benefits, which were then under discussion by defendant's agents and the insured.

There is nothing in the evidence to show that it was the intention of either the defendant or the insured to wipe out or cancel the death benefit feature of the policy. Nowhere in the release nor in the endorsements on the draft is any mention made of death benefits. On the contrary, the language appearing in both instruments shows a definite intention and purpose to make settlement only of the claims for sick benefits. The settlement as referred to in the endorsement on the draft was made:

"On account of injuries received or illness contracted on or about the 8th day of May, 1930, and any loss that may hereafter result from *said injuries or illness.*" (Emphasis ours.)

The language appearing in the release itself is even more restrictive than that appearing on the draft, for we find the following:

"Said policy was rendered void by reason of full settlement *for this disability, rheumatism & gastritis & neuritis* . . ." (Emphasis ours.)

A settlement made in such a manner, under such circumstances and by the use of such language certainly could not have rendered the whole policy void, notwithstanding the declaration to that effect in the release.

No consideration whatsoever is shown anywhere as having been paid to the insured for the cancellation of the death benefit feature of the policy. It, therefore, remained undisturbed and was in full force and effect at that time notwithstanding the release. There is nothing in the record to warrant a construction of the release which would make it apply to the death benefit provided for in the policy.

In Och v. M. K. & T. Ry. Co., 130 Mo. 27, Judge BARCLAY, in a separate opinion referring to a release in that case, said (l. c. 72):

"The fact that plaintiff settled for part of her original claim for damages, and reserved a right of action for other damages, should they be developed, is no obstacle to her recovery for the latter. The law to that effect is very old, and elemental." [See also Thee v. Wabash Ry. Co., 208 Mo. App. 200, 204, 233 S. W. 959, 961.]

The action of the trial court in refusing to give the instructions asked for by the defendant was, therefore, correct. Inasmuch as the release dealt only with sick benefits and had nothing whatsoever to do with the death benefit, for which this suit was brought, it was,

of course, not necessary for plaintiff to obtain a cancellation thereof in equity. Hence, defendant's Instruction B, which told the jury that it was necessary for her to do so, was incorrect and was properly refused.

It follows from what we have said above that defendant's peremptory Instruction D, which was in the nature of a demurrer to the evidence, was also properly refused.

By Instruction I, the defendant sought to have the court tell the jury that if they found there was a disagreement between defendant and the insured as to defendant's liability to the insured for sick benefits, and she accepted $14 from defendant and executed and delivered to defendant the release shown in the evidence, then the verdict should be for defendant. This instruction was also properly refused for the reasons which we have given with respect to the instruction mentioned above.

Plaintiff's Instruction 1, complained of by defendant, simply told the jury that if they found for plaintiff they might find for her in the sum of $87.50, and in addition thereto might allow her interest on the same at the rate of six per cent per annum from the first day of April, 1931. In the view which we have taken of this case, we find no error in this instruction.

Defendant next complains that the court erred in refusing to give its instructions C, D and H, and in giving plaintiff's instruction Number 1. Defendant argues that even assuming that the release was ineffective, the evidence shows as a matter of law, or if not a matter of law then it raised a question of fact with respect to whether or not the policy was out of benefit at the time the insured died.

The evidence shows that it was the custom of defendant to collect from the insured at her home the weekly premiums on the policy. The premium receipt book, which was introduced in evidence, showed that the payment of premiums was entered therein on June 9th and June 16, 1930, respectively, at the office of the defendant company.

Ed Trottler, a witness for plaintiff, testified that the two payments mentioned, which were the last two entered in the premium receipt book, were paid by him at defendant's office after collectors for defendant had ceased coming to the home of the insured; that he also made a payment of a premium on the policy at defendant's office on June 19, 1930, but instead of entering that payment in the receipt book, the clerk at defendant's office gave him a conditional receipt therefor, telling him that she was not allowed to enter it in the premium receipt book. He further testified that a week after June 19, 1930, he again went to the defendant's office where he tendered payment of another premium, which was refused by the clerk, whereupon

he· spoke to the manager, who, referring to the premiums, said: ''We won't take any more.''

It is not disputed by defendant that it refused to accept any more premiums on the policy after the payment made on June 19, 1930, for which it gave a separate conditional receipt. Defendant refused further premium payments on the ground that the whole policy had been surrendered by the insured, but that was an erroneous conclusion on the part of defendant, as we have shown. Its refusal, therefore, to receive further premiums was wrongful and the insured was thereby relieved of the necessity of making any further tenders of premium payments. A tender of additional premium payments would have been useless under the circumstances, and the law does not require things to be done uselessly.

Neither the insured's rights nor the rights of her beneficiary were affected by her failure to make further tenders of premium. The policy still remained in force and effect except as to the sick benefits for which the settlement was made. Defendant, therefore, cannot be heard to say that its wrongful refusal of the tender of the premiums had the effect of placing the policy out of benefit with respect to the death benefit provided for therein. [Newman v. John Hancock Mutual Life Ins. Co. (Mo. App.), 7 S. W. (2d) 1015, 1017.]

It follows that the court's action in refusing defendant's instructions C, D and H was correct. Instructions C and D were peremptory instructions directing a verdict for defendant and were properly refused. By its Instruction H defendant sought to have the court tell the jury that if they found that the premiums on the policy were more than four Mondays in arrears at the date of insured's death, their verdict must be for defendant. In view of what we have heretofore said, this instruction was also properly refused.

It would have been proper for defendant to have requested an instruction requiring the jury, in the event they found in favor of plaintiff for the face amount of the policy, to deduct therefrom an amount equivalent to the total of premiums for the period between the date of the last permium payment accepted by defendant and the date of the death of the insured, but since defendant did not do so and has not raised any such question in this court, we are not warranted in taking any action thereon.

Defendant next complains that the court erred in refusing to give its instructions D, E and G. We have already referred to Instruction D, which was a peremptory instruction in the nature of a demurrer to the evidence. Instructions E and G offered by defendant were based upon the theory that the insured had abandoned her rights under the policy. The evidence shows that after the insured executed and delivered the release on June 17, 1930, witness Trottler went to the office of defendant on June 19, 1930, where he paid a

premium on the policy for the insured. The evidence further shows that a week later the same witness, on behalf of the insured, tendered to defendant at its office still another premium. This evidence was not disputed. It shows conclusively, insofar as the position of the insured was concerned, that there was no abandonment of the policy by her, and since defendant's theory of abandonment was based upon its erroneous construction of the release, it follows that the instructions referred to were properly refused.

Defendant contends that the court erred in refusing to give its Instruction F and in giving plaintiff's Instruction 2, for the reason that the evidence did not warrant the submission to the jury of the issue of vexatious refusal to pay.

In view of the evidence in this case, which we have heretofore set out and which we deem unnecessary to repeat here, we believe the court was justified in letting the jury decide whether or not defendant was liable for the penalties provided by law. [Sec. 5929, R. S. 1929 (Mo. Stat. Ann., sec. 5929, p. 4515); State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 262 S. W. 43; Streeter v. Washington Fidelity National Ins. Co. (Mo. App.), 68 S. W. (2d) 889, 893.]

Defendant complains of plaintiff's Instruction No. 2 on the ground that it does not conform to the statute which provides for penalties for the vexatious refusal of an insurer to pay a claim. We are of the opinion that this point is well taken. The instruction told the jury that if they found that defendant's refusal to pay the claim was vexatious, they may ''in addition to the amount of the claim and interest thereon, allow plaintiff ten per cent of the amount of the insurance mentioned therein as damages . . .'' The statute provides for damages ''*not to exceed* ten per cent on the amount of the loss . . .'' (Emphasis ours.) It is clear, therefore, that the instruction was erroneous in this respect.

We believe, however, that such error did not affect the merits of the main case, and, therefore, do not regard its as sufficient to warrant us in remanding the case for a new trial on that ground alone.

The amount allowed by the jury as damages under the instruction was separately assessed in the sum of $8.75, which is exactly ten per cent of the amount of the principal sum named in the policy. Plaintiff urges that this point of defendant is too small for the law to notice. It is true the amount is not large, but it cannot be treated as a mere trifle. Furthermore, we are not at liberty to ignore the error of the court in giving an erroneous instruction with respect to this item. The doctrine expressed in the maxim, ''*De minimis non curat lex*'' is not applicable here. It is our view that the ends of justice will be served by requiring plaintiff to enter a *remittitur* for the amount named.

We have examined other points made by defendant, but find nothing therein requiring interference on our part.

If plaintiff, respondent herein, will, within five days of the filing of this opinion, enter in this court a *remittitur* in the sum of $8.75, the judgment of the circuit court will thereupon stand affirmed for the sum of $170.38 as of the date of the original judgment in the circuit court; otherwise the judgment shall stand reversed and the cause remanded for another trial. *Hostetter, P. J.*, and *Becker, J.*, concur.