260

[Civ. No. 9908. First Appellate District, Division Two.—August. 9, 1937.]

MERVYL MORIARTY, Appellant, v. CALIFORNIA WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Respondent.

Livingston & Livingston for Appellant.

Hartley F. Peart and Howard Hassard for Respondent.

STURTEVANT, J.—In an action brought to recover the amount due the beneficiary of Spencer J. Johnson, deceased, under a group insurance policy, the jury returned a verdict in favor of the plaintiff. The trial court granted the defendant's motion for a new trial. From that order the plaintiff has appealed.

After all of the parties had finished introducing evidence, the defendant made a motion that the jury be directed to bring in a verdict in its favor. The trial court denied that motion. Thereafter the defendant made a motion for a new trial. Later the motion was granted. The wording of the order granting the motion was as follows: "The motion for a new trial having been heretofore submitted to the court for decision, and the court having fully considered the same, it is ordered that the said motion for new trial be and the same is hereby granted upon the sole ground that the court erred in denying defendant's motion for a directed verdict for the reason that the premium which became due on January 19, 1932, on the policy described in the complaint was not paid within the grace period expiring February 19, 1932, and that defendant did not waive the payment thereof and is not estopped to forfeit said policy on account of such nonpayment." The plaintiff asserts that the sole question presented by this appeal is whether the trial court erred in denying the defendant's motion for a directed verdict and if it did not then that it erred in granting the motion for a new trial and the order should be reversed. The defendant contends that in its motion for a new trial it made many assignments of error and if any one of said assignments was well made then the order should be affirmed. From the conclusion which we have reached it will not be necessary to discuss anything excepting the order refusing to grant defendant's motion for a directed verdict.

Mullin-Acton Company and Mullin-Johnson Company were affiliated corporations engaged in the insurance business in San Francisco. The uncontradicted testimony showed that Mullin-Johnson Company was the corporate agent in charge of the brokerage business of Mullin-Acton Company. With the facts all known to both parties, on September 18, 1931, the California Western States Life Insurance Company (then Western States Life) wrote a policy of group insurance upon the lives of the employees of the affiliated corporations. That document was known as the master contract of group insurance. The original was lost but evidence proving its contents was offered at the trial. To each employee a certificate was issued showing his interests under the master policy. By the terms of the policy the premiums fell due on September 19, 1931, and monthly thereafter. A representative of Mullin-Johnson Company collected from its employees

and a representative of the Mullin-Acton Company collected the amounts due from its employees and the latter company transmitted the premium moneys to the defendant's home office. In that manner every premium was paid down to and including the month of November. As to each premium the practice was for the insurance company to send to the policyholder a statement showing the amount of each premium and when due. Such a statement and such a notice went forward regarding the premium payable December 19, 1931. The policy provided thirty-one days as a period of grace. On January 14, 1932, Mullin-Acton Company drew and forwarded its check in the sum of $71.38. At that time Mullin-Acton Company was financially embarrassed. On receiving the check the defendant did not immediately deposit it and when it did the bank on which it was drawn refused to pay the check because the bank had been compelled to exercise its bankers' lien to protect itself and no funds remained to pay the check. In the meantime the creditors of Mullin-Acton Company filed an involuntary petition to have the latter adudged a bankrupt and on January 22, 1932, it was so adjudged. When the defendant was informed that said check had not been paid it sent Robert F. Benjamin, an employee in the office of the manager of the group department, to attempt to collect the amount of the check from the policyholder. He called on Mr. George H. Mullin, president of Mullin-Johnson Company and formerly president of Mullin-Acton Company. Mr. Mullin advised him to call on Mr. Raymond A. Burr, the receiver in bankruptcy of Mullin-Acton Company. Benjamin did so but without success, and when he returned Mr. Mullin caused the check of Mullin-Johnson Company to be issued and delivered to Mr. Benjamin. That check was cashed February 10, 1932. It paid the premium that fell due December 19, 1931.

While straightening out the check tangle Mr. Mullin became aware of the dangerous condition in which the insurance of the employees was becoming involved. The *pro rata* contributions of the Mullin-Johnson Company amounted to $10.40. That sum he offered to pay Mr. Benjamin but he declined to accept it. In doing so he stated to Mr. Mullin: that the bankruptcy of the Mullin-Acton Company had resulted in the appointment of a receiver, Mr. Burr; that Mr. Burr refused to continue the policy so far as the employees

of Mullin-Acton Company were concerned; that under those circumstances it was necessary to recalculate the premiums; and, until the latter step had been taken, Mr. Benjamin did not know what sum or sums to collect. About this time other conversations were had between Mr. Mullin and Mr. Benjamin. No other tender was made to Mr. Benjamin nor was any sum sent to the home office of the defendant. Affairs stood as stated above when, on February 24, 1932, Spencer J. Johnson died. The last date on which the premium which fell due January 19, 1932, could have been paid under the terms of the policy expired February 19, 1932—that is, five days before the date of the death of Mr. Johnson.

In her complaint the plaintiff inserted three separate counts. In the first count she pleaded performance. In the second count she alleged that the premium which became payable February 19, 1932, was not paid but defendant waived and excused the payment thereof. In the third count she alleged certain facts by reason of which defendant was and is estopped from declaring a forfeiture of the policy. On the trial no evidence of performance was offered. █ The evidence offered to sustain the claim of waiver was wholly insufficient. The evidence introduced on the subject of waiver was slight and furthermore it was improperly received. Over the objection and exception of the defendant, Mr. Mullin was allowed to testify that at the time he made the tender of $10.40 to Mr. Benjamin the latter stated it was not necessary to pay the premium until it was recalculated and when that step was taken Mr. Mullin would be informed and in the meantime the policy would remain in force. That testimony was received under a promise of the plaintiff's attorney that it would be connected. It was never connected. There was no testimony that Mr. Benjamin was anything but a soliciting agent or that he had authority to speak on the subject for the defendant. As stated above, the contract prescribed the due date of the premium. It also contained a covenant as to what officers could change the policy. No evidence was introduced that Mr. Benjamin was such an officer, but, on the other hand, much evidence was introduced to the effect that he was not. It was error to receive the testimony and it did not tend to prove a waiver. (*Sharman* v. *Continental Ins. Co.*, 167 Cal. 117, 125 [138 Pac. 708, 52 L. R. A. (N. S.) 670]; *Belden* v. *Union Central Life Ins. Co.*, 167 Cal. 740, 743 [141 Pac. 370].)

 The plaintiff's claim of estoppel was based on two wholly different theories, each theory being addressed to a separate state of facts. The first theory was that Mullin-Johnson Company was the insured and the employer of the deceased, that it tendered the premium and defendant refused to accept it. The original policy had been lost and plaintiff was not able to produce it at the time of the trial. She introduced evidence that her attorney, Mr. Livingston, had applied to the defendant for a copy, that defendant sent one which on its face named the insured, ''Mullin-Acton Company and Mullin-Johnson Company'', as employers. She then introduced evidence that later Mr. Marcus Gunn, vice-president of the insurer, struck out ''and Mullin-Johnson Company'', claiming those words were not in the original policy and were inserted on the copy by mistake. No witness testified that the original policy named the two companies as employer. However, the plaintiff claims she had the right to ask the jury to find that the policy named the two companies as employers, and that the bankruptcy of Mullin-Acton Company did not affect the Mullin-Johnson Company nor the employees of the latter. The first answer is that the plaintiff did not introduce any evidence other than a mere suspicion that the policy was in fact written ''Mullin-Acton Company and Mullin-Johnson Company'', employers. The second answer is that the plaintiff cites no authorities, and we know of none, holding that a policy of group insurance may legally be written on a group of employers. (Stats. 1929, chap. 245.) That only one policy was issued is, and must be, a conceded fact. It was numbered G–248,667 and that number was incorporated in the certificates issued to the several employees and in the application made for insurance.

 The other theory regarding estoppel may be summarized as follows: The plaintiff claims that under the facts the insurer caused and allowed Mr. Benjamin to exercise such authority as would constitute him the ostensible general agent of the insurer and that his acts were in legal effect the acts of the company. We think not. Mr. Cranmer was manager of the group department. He obtained from Mullin-Acton Company an application for insurance. Not until after the death of S. J. Johnson did he have any further contact with the insured. After Mr. Cranmer obtained the application of the employer, Mr. Benjamin, who was a helper in his office,

interviewed the employees and obtained their individual applications. No other contacts are noted in the evidence until Mullin-Acton Company's check dated January 14, 1932, was returned unpaid. At that time Mr. Benjamin was directed to endeavor to collect the premium that check represented. He was not given authority to do anything regarding any other premium or take any action regarding the contract of insurance theretofore entered into. The plaintiff did not claim that he was given express authority. On the other hand his express authority was reduced to writing and shows on its face that he had no power to write a contract or alter one. However, the plaintiff adverts to the alleged conversation between Mr. Mullin and Mr. Benjamin in which the latter is claimed to have stated the policy was still in force. To that argument there are many complete replies. Mr. Benjamin denied ever making the statement. However, if Mr. Benjamin made the statement, it was true. The contract between the parties was made up and consisted of the policy and the applications. It was so written in paragraph sixteen of the policy. In paragraph three of the application it was provided, ''If the proposed insurance is contributory, shall the insurance on the life of any employee who has terminated his employment during a period for which a premium is due or has been paid by the employer, automatically continue in force under the Group until the next premium due date? Ans. Yes.'' As we understand the language of the policy it is to the same effect. (Par. 3.) But the fact that the insurance under the policy continued for a period does not solve the problem. The period, under the facts in this case, would have expired February 19, 1932. The certificate issued to the deceased, in compliance with the call of the statute (Pol. Code, sec. 629b, subd. 2, par. ''d''), recited, ''In the event of termination of employment for any reason whatsoever, the employee's life insurance may be continued as provided under the Conversion Privilege described on page two hereof.'' That conversion privilege provided that within thirty-one days after the date of termination of employment, each employee might file a written application to convert his insurance and that a policy would issue giving insurance commencing as of the actual date of the termination of the employment. Furthermore, it is a conceded fact that when Mr. Mullin offered to pay $10.40 as the premium

on the attaches of Mullin-Johnson Company, Mr. Benjamin declined to accept it because he had no instructions and the matter must be taken up with "the home office". It cannot be said his action was wrong. Whether, under the facts, a time had arisen to recalculate the premium or the policy had come to an end, were questions which, under the terms of the policy, should be answered by the home office.

Mullin-Acton Company presumably held the policy at the time of the conversation in question. Each employee presumably held his certificate. The "home office" of the defendant company was located in Sacramento. Under paragraph three of the policy all premiums were payable on or before their due date "at the home office of the company". A period of grace of thirty-one days was allowed. The last payment paid the premium to January 19, 1932. The days of grace expired February 19, 1932. The privilege and duty of paying premiums rested with the employer and not with one or more employees. (*Magee* v. *Equitable L. Assur. Soc.,* 62 N. D. 614 [244 N. W. 518, 85 A. L. R. 1457]; *Baker* v. *Prudential Ins. Co.,* 279 Ill. App. 5, 12, 13.) No application, either orally or in writing, was made by the deceased to convert his insurance. However, the plaintiff contends the defendant is, under the facts, estopped from claiming that the insurance was allowed to lapse. Subdivision 3 of section 1962 of the Code of Civil Procedure provides: "3. Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." That in a proper case that rule is applicable to actions to recover on insurance policies is clear. (*Maggini* v. *West Coast Life Ins. Co.,* 136 Cal. App. 472, 479 [29 Pac. (2d) 263].) But the particular factors necessary before applying the doctrine in any action are set forth in the leading case of *Biddle Boggs* v. *Merced Min. Co.,* 14 Cal. 279, at page 367, as follows: "It is undoubtedly true that a party will, in many instances, be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said, in such cases, to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property, it must appear, *first*, that the party making

the admission by his declarations or conduct, was apprised of the true state of his own title; *second,* that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; *third,* that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and *fourth,* that he relied directly upon such admission, and will be injured by allowing its truth to be disproved.'' We have shown above that Mr. Benjamin had no authority on behalf of the defendant to waive any provisions of the policy. Plaintiff points to nothing showing he had authority to estop the defendant. Assuming, solely for the purposes of this decision, that he did have authority, there is no evidence he did not speak truly. There is no evidence the deceased did not know all of the facts as completely as did the defendant. No single fact appears wherein or whereby, if an estoppel arose, the deceased would have been estopped, but it is a cardinal rule that an estoppel must be mutual. (10 Cal. Jur. 627.) But in the instant case there is not a word to the effect that the deceased would, after the conversation between Mr. Mullin and Mr. Benjamin, rely wholly on a contract between Mullin-Johnson Company and the defendant as furnishing him insurance; nor that there was such a document in existence, nor that, if there was such a document, it was legal within the provisions of our statutes applicable to group insurance.

When the motion for a directed verdict was made the rule governing the action of the trial court was as set forth in *Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267]. At page 473 the court said: ''The conditions under which the course pursued by the court in this instance is held to be proper are defined by a series of uniform decisions of this court, to which it will be sufficient to make reference. The doctrine of scintilla of evidence is rejected, as it is by the courts of the United States. (*Commissioner of Marion Co.* v. *Clark,* 94 U. S. 278 [24 L. Ed. 59].) A directed verdict is proper, unless there be substantial evidence tending to prove in favor of plaintiff all the controverted facts necessary to establish his case. In other words, a directed verdict is proper whenever, upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence. To warrant a court in directing a verdict, it is not necessary that there should be an absence of conflict in the evidence,

but, to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one." From what has been said above we think it is clear that the trial court would not have erred if it had granted the defendant's motion for a directed verdict. If that is so, it follows it did not abuse its discretion in granting the motion for a new trial.

*Williams* v. *Employers' Liability Assur. Corp.*, 69 Fed. (2d) 285, is relied on by the plaintiff. It contains nothing at variance with what we have said. The agent whose acts were involved in that case was acting under an express authorization and his acts were ratified by the general agent of the insurance company.

The order appealed from is affirmed.

Nourse, P. J., concurred.

SPENCE, J., Dissenting.—I dissent upon the ground stated in the dissenting opinion heretofore filed in this action.∎

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 8, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 4, 1937.

SPENCE, J., Dissenting.—I dissent. The effect of the trial court's ruling on the motion for new trial and of the majority opinion sustaining that ruling, is to declare that the evidence was insufficient to go to the jury on the issue of estoppel. I cannot agree with that declaration.

The present case differs from the ordinary case involving a single assured and a fixed premium. The action was brought upon a certificate issued under a so-called "Group Policy" and under this form of insurance the real assured, the employee, deals solely with his employer in making his contributions to the premium paid. The employee's contributions are deducted from his salary and the premium, which is paid by the employer, varies with each payment de-

pending upon the number of employees then employed as well as other factors. It further appears that the "Group Policy" under discussion differs from the ordinary group policy in that the employees of more than one company were insured thereunder.

The evidence showed that while the original application was signed only by the Mullin-Acton Company, both the Mullin-Acton Company and the Mullin-Johnson Company were named therein as separate but affiliated corporations. At the time of making said application the Mullin-Acton Company and the Mullin-Johnson Company separately executed requests for group insurance upon the lives of their respective employees. Only one policy was issued and the original was lost. The copy first furnished by the insurer upon request showed that both companies were named as policyholders in the group policy, but the copy supplied by the insurer on the trial named only the Mullin-Acton Company as the policyholder. Nevertheless, separate statements were made out each month calculating the premiums upon the employees of each company separately and the total amount due was computed each month by adding the amount due from Mullin-Acton Company and the amount due from the Mullin-Johnson Company. Furthermore the certificate issued to Johnson recited that the group policy had been "issued and delivered to Mullin-Johnson Company", his employer. The evidence was therefore ample to support a finding that the original group policy named both the Mullin-Johnson Company and the Mullin-Acton Company as the policyholders.

It is conceded that the monthly premiums were paid up to the premium which fell due on January 19, 1932. It is further conceded that the last-mentioned premium was not paid and that Johnson died on February 24, 1932, being five days after the expiration of the thirty-one day period of grace allowed for payment by the terms of the policy. The insurer denied liability in the following terms: "Since the monthly premium due under this group contract as of January 19, 1932, was not paid on or before February 19, 1932, the last day of grace for its payment, the contract lapsed and became null and void in accordance with its terms." It defended upon the same ground. The sole issue presented by this appeal is whether there was sufficient evidence to go to the jury upon the claim that the insurer was estopped to

declare a forfeiture of the policy as to the employees of Mullin-Johnson Company.

In addition to the foregoing there was evidence to show that the total premium due on January 19, 1932, from both companies was calculated at $69.72 and that the usual statements were forwarded at that time; that Mullin-Acton Company had been in financial difficulty and was adjudicated a bankrupt on January 22, 1932; that the Mullin-Johnson Company continued to operate until some time after the death of Johnson on February 24, 1932, and that neither the employment of Johnson nor of any other employee of the Mullin-Johnson Company had terminated prior to Johnson's death; that the insurer sent notices to the former employees of Mullin-Acton Company stating that their insurance was "no longer in effect" and advising them to see a representative of the insurer regarding their conversion privileges but the insurer sent no similar notices to the employees of the Mullin-Johnson Company; that Mr. Cranmer was the manager of the group insurance department of the insurer charged with the duty of writing new group insurance and "the conservation thereof"; that Mr. Benjamin was Mr. Cranmer's assistant; that said representatives had handled the writing of the original policy and also the previous difficulty regarding the collection of a premium; that on February 9, 1932, Mr. Mullin discussed with Mr. Benjamin the question of the premium due on account of the employees of the Mullin-Johnson Company and tendered to him the sum which appeared to be due as the premium on account of the employees of that company; that Mr. Benjamin declined to accept this tender, stating that "he could not tell what the premium would be until he got the correct amount from the home office". He further stated, "it would be necessary for them to recalculate the premiums—because the number of people that were then employed by Mullin-Johnson Company were not—did not equal the original number that were employed by both Mullin-Acton Company and Mullin-Johnson Company"; that "the matter would have to be taken up with the home office in Sacramento" and that Mr. Mullin "would hear from him then within a short period of time"; that thereafter Mr. Mullin tried almost daily without success to reach Mr. Benjamin and Mr. Cranmer by telephone; that between February 15th, and February 17th, he reached Mr. Benjamin and asked for news from Sacramento; that Mr. Benjamin advised him

that he had not heard from Mr. Cranmer; that the home office was upset because of the merger of Western States Life and California States Life; that Mr. Cranmer was spending most of his time in Sacramento and that the policy would be kept in force. That after the conversation with Mr. Benjamin, no new statement regarding the premium was sent to the Mullin-Johnson Company and no notice of any kind was sent to any of its employees; that Mullin-Johnson Company was at all times ready, willing and able to pay the amount due when that amount was ascertained.

The foregoing evidence was ample to go to the jury on the issue of estoppel and, if believed by the jury as it apparently was, it was sufficient to create an estoppel against the insurer. It will be noted that the insurer recognized the fact that it was not entitled to the full premium as it had declared that the insurance of the Mullin-Acton employees under the group policy was no longer in force by reason of the termination of their employment on January 22d. It will be further noted that the insurer recognized that the employment of the employees of the Mullin-Johnson Company had not terminated and that their insurance under the group policy remained in force as it sent no notices to said employees similar to those sent to the Mullin-Acton employees. The Mullin-Johnson Company employees had regularly made their contributions on account of the premium to their employer and said employer made a tender during the grace period of the amount which it believed to be due on account of the premium which became payable on January 19th. This tender was refused with the statement that the premium would have to be recalculated because of the changed conditions and that a corrected statement would be sent. The insurer failed to recalculate the premium or send a corrected statement within the grace period or prior to Johnson's death. The acts and omissions of the insurer and of its representative, Mr. Benjamin, as shown by the evidence set forth, were such as to warrant the belief on the part of Mullin-Johnson Company and its employees that the insurance would be treated as in force as to said employees pending the recalculation of the premium and the sending of a corrected statement and the insurer should not be permitted to defend upon the claim that the policy was forfeited as to said employees by nonpayment of said premium. We are not here dealing with the question of the authority of a representative to waive pay-

ment or extend the time for payment of a premium, but are dealing rather with the question of what acts and omissions on the part of an insurer and its representatives will give rise to an estoppel to declare a forfeiture on the ground of non-payment of a premium within the time provided by the policy. While no authority directly in point has been cited, the following tend to support the views expressed herein: *Baumann v. Metropolitan Life Ins. Co.*, 144 Wis. 206 [128 N. W. 864]; *Continental Casualty Co. v. Bridges,* (Tex. Civ. App.) 114 S. W. 170; *United States Life Ins. Co. v. Lesser,* 126 Ala. 568 [28 So. 646]; *Hawkins v. Washington Fidelity Nat. Ins. Co.,* 230 Mo. App. 882 [78 S. W. (2d) 543]; *Reid v. Northern Assur. Co.,* 63 Cal. App. 114 [218 Pac. 290]; 10 Cal. Jur. 625 et seq.

The majority opinion proceeds upon the theory that Johnson's employment terminated on January 22, 1932, the date when the Mullin-Acton Company was adjudicated a bankrupt, and that thereafter Johnson was only entitled to exercise a conversion privilege which he did not do. But Johnson was not an employee of the Mullin-Acton Company. He was an employee of the Mullin-Johnson Company and that company continued to operate and Johnson continued in its employ up to the time of his death. He could not therefore have exercised the conversion privilege provided in the policy as that privilege could only be exercised "within 31 days after the actual date of termination of employment".

The motion for new trial was granted "upon the sole ground that the court erred in denying defendant's motion for directed verdict". I am of the opinion that the order granting a new trial should be reversed as it cannot be sustained upon the ground which was expressly declared to be the sole ground for the granting thereof.