[Sac. No. 6140. In Bank. Jan. 26, 1951.]

TRUCK INSURANCE EXCHANGE (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Mullen & Filippi and W. N. Mullen for Petitioner.

Keith, Creede & Sedgwick and Scott Conley, as Amicus Curiae on behalf of Petitioner.

T. Groezinger and Alfred C. Skaife for Respondents.

SPENCE, J.—This is a proceeding to review a death benefit award in favor of Anna B. Groom, mother of Raymond Groom, deceased, who sustained injury and death on November 28,

1948, in the course of his employment as a truck driver in the logging business of his employer, Harry P. Sorenson. The commission found that at the time in question petitioner was the insurance carrier for the employer. It is this latter finding that petitioner attacks, contending that its liability under the terms of its compensation insurance policy with the employer had been effectively terminated by the mailing of a notice of cancellation to him more than three weeks prior to the date of the injury. But, as the commission argues, there is uncontradicted evidence in the record of facts constituting an estoppel against petitioner's assertion of the efficacy of its cancellation notice, and upon that basis the commission's finding of liability in making its award against petitioner is not open to successful challenge.

It appears that for several years prior to the death of his employee, Sorenson had been carrying compensation insurance issued by petitioner on an annual basis. Premiums were payable in quarterly installments. Yearly renewals of the policy were in the form of a "declaration" to be attached to the basic insurance contract. Sorenson was in arrears in the payment of his third quarterly premium on his policy expiring September 25, 1948, but despite that delinquency petitioner issued a renewal policy on November 2, 1948, for the year commencing September 25, 1948, and mailed it to him at Clipper Mills, California, the address given by the insured on the prior policy. On November 3, 1948, petitioner mailed a notice of cancellation to Sorenson at the same address, setting forth the amount of his delinquency with regard to premiums earned under his prior policy, and that unless such due payments were received by it prior to November 16, 1948, the policy issued on November 2, 1948, would be cancelled as of November 16, 1948. It was also stated in the notice that "payment of premium after cancellation date will automatically reinstate your policy as of the date we receive it." Because of Sorenson's various changes of address during the fall months in 1948 and the time lost in the forwarding of his mail until it finally reached him at Marysville, Sorenson did not receive either the renewal policy or the cancellation notice until December 1, 1948, three days after the death of the employee.

The insurance contract contained the following provision: "This policy may be cancelled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effec-

tive. The effective date of such cancellation shall then be the end of the policy period. . . . Notice of cancellation shall be served upon this employer as the law requires, but, if no different requirement, notice mailed to the address of this employer herein given shall be a sufficient notice. . . ."

There was considerable testimony before the commission directed to the dealings between Sorenson and the office of petitioner's agent, Fred Spiller, in Marysville with respect to the insurance coverage. Sorenson testified that he depended upon said agent to protect him against any cancellation; that the agent did not communicate with him in any way during the month of November, 1948, and prior to the 28th of November; that when he went to Spiller's office on November 29 to report the fatal accident, he was told that his policy appeared to be "in good shape," and that it was not until that afternoon that he first learned of the cancellation notice, when he was so advised by petitioner's agent following the latter's routine check with the home office in Los Angeles. Sorenson further testified that he had never received a cancellation notice from petitioner for nonpayment of premium prior to the one here involved; that he did not keep any books or diary as to when payments would be due and just "left [his] insurance problems to Spiller's office, and depended on him, but [he] guess[ed] that isn't the proper thing to do, but it had worked out very satisfactorily, and [he] just depended on it that way"; that he didn't worry about a delinquent premium payment because he "knew when it got down to where it had to be taken care of, that Mr. Spiller or his office would call [his] attention to it"; that he had "been behind" in payments at other times, "but Mr. Spiller always notified [him] so [he] got [his] premium in without the policy ever being cancelled"; and that on such occasions Spiller or his office would "get in touch with [him] personally."

Don Day, the manager of Spiller's office, testified that although a copy of the cancellation notice of November 3 from the head office had been received at the Marysville office, Sorenson had not been personally contacted in the usual way because the copy of the notice had been inadvertently placed in Sorenson's file without having been called to Day's attention; that he knew that "Sorenson [was] running around the country and having different addresses" by reason of the nature of his activities in the lumber business; that it

was their method of communication to call certain business customers of Sorenson and learn what address would reach him; that they never worried when a letter sent to Sorenson might go around to three or four different addresses, because they "would get in touch with him if there was any urgent matter through one of his business connections."

Following his receipt of the cancellation notice and on December 8, 1948, Sorenson paid his delinquent premium and petitioner issued its "reinstatement endorsement" of the insurance policy, excluding the period of "November 16, 1948, to . . . December 8, 1948." This procedure was consistent with petitioner's regular practice of not according the policy any "retroactive" effect in fixing the reinstatement date for the insurance coverage.

Petitioner contends that the mailing of the cancellation notice to Sorenson operated to terminate its insurance liability under the renewal policy as of the effective cancellation date specified in the notice—November 16, 1948—and that Sorenson's delayed receipt of the notice could have no effect on the efficacy of the cancellation made in the manner prescribed by the terms of the insurance contract above quoted. An examination of the authorities on this question reveals a sharp conflict. (See Couch, Cyclopedia of Insurance Law, vol. 6, § 1440, p. 5094; 29 Am.Jur. § 285, p. 264; 123 A.L.R. 1008.) However, assuming, without deciding, that petitioner is correct in its claim that the more recent and better reasoned cases support petitioner's position (see *Trinity Universal Ins. Co.* v. *Willrich*, 13 Wn.2d 263 [124 P.2d 950, 955]; also, comment in *Naify* v. *Pacific Indemnity Co.*, 11 Cal.2d 5, 10 [76 P.2d 663, 115 A.L.R. 476]), there remains the disputed point of whether petitioner is estopped in any event to rely on the validity of its cancellation notice to Sorenson. In view of our conclusion on this latter point, it becomes unnecessary to decide the former.

While the commission did not make an express finding on the issue of estoppel, it did find that at the time of the employee's death .petitioner was "the employer's insurance carrier." The record affirmatively shows that "a finding of coverage was made because the evidence showed that the action of the agent of the carrier created an estoppel." This evidence, as above reviewed, was uncontradicted and established that it was Sorenson's custom to rely on petitioner's local agent to keep his insurance coverage in order and to give him *personal* notice if there was any danger of cancellation

of his insurance policy by reason of an arrearage in premium payments. Apparently petitioner's local agent did not trust the mail to reach Sorenson on matters requiring urgent attention, but traced his whereabouts as he moved about the country in the course of his business, through his various customers, and so made personal contact with Sorenson by telephone; and Sorenson relied on this practice over the years of his insurance dealings with petitioner. In fact, as above noted, the office manager for petitioner's local agent testified that such personal contact would have been made with Sorenson in the instant case had not the cancellation notice sent from the home office been overlooked as the result of being inadvertently placed in Sorenson's file in the local office, and so was not attended in the customary way.

Petitioner argues that there was no evidence that it had knowledge of, or acquiesced in, the practice of its local agent to notify Sorenson personally of his delinquency in premium payments so he could protect himself from the loss of his insurance coverage. ■ But the knowledge of petitioner's local agent concerning the insurance dealings with Sorenson is imputable to petitioner. (*Eagle Indem. Co.* v. *Industrial Acc. Com.*, 92 Cal.App.2d 222, 225-226 [206 P.2d 877]; see, also, *Bankers Indemnity Ins. Co.* v. *Industrial Acc. Com.*, 4 Cal.2d 89, 92 [47 P.2d 719].) And the force of this settled legal principle is not mitigated by a provision in the policy declaring that "notice to any agent or knowledge possessed by any agent . . . shall not effect a waiver or a change in any part of the policy or estop the Exchange from asserting any right under [its] terms . . ." (*Eagle Indem. Co.* v. *Industrial Acc. Com., supra,* pp. 227-229.) Nor is the question of petitioner's insurance liability here affected by the fact that upon reinstatement of the policy as of the date of petitioner's receipt of the delinquent premium payment, specific exclusion of coverage was noted for the lapsed period of "November 16, 1948, to . . . December 8, 1948." That was a practice "automatically" enforced by petitioner in *all* cases of "payment of premium after cancellation date" as stated in the cancellation notice, and Sorenson's concurrence therein as a matter of routine procedure adopted by petitioner, and for the purpose of obtaining the continued insurance coverage required by law, has no other significance in the disposition of this particular insurance claim.

As the record has been above reviewed, it is clear that the commission and petitioner were fully aware of Sorenson's

claim as to the propriety of his reliance on the acts of petitioner's agent in creating an estoppel against petitioner's assertion of the effectiveness of its cancellation notice.

■ Moreover, the commission, in line with the parties' presentation of this compensation claim, undoubtedly had the right to consider the evidence on the issue of estoppel, which evidence consisted of the uncontradicted testimony of Sorenson as corroborated by Day, the office manager of petitioner's local agent. (*Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346, 349 [159 P.2d 24].) ■ Thus, the ultimate finding of the commission that petitioner was the insurance carrier for Sorenson at the time here in question includes the subordinate finding that petitioner was estopped from denying liability under the terms of its policy with Sorenson. The implied finding "results by necessary implication" (*Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840, 846 [147 P.2d 558]), and the absence of an express subordinate finding does not affect the validity of the award as supported by the ultimate finding. (24 Cal.Jur. § 207, p. 974, and cases there cited.)

■ However, petitioner further attacks the award with respect to its allowance of $300 for burial expense, the statutory maximum (Lab. Code, § 4701, subd. (a)), and the commission concedes the merit of this objection. Petitioner stipulated that, if liability was established, the deceased's mother was entitled to her contribution to the burial expense, which amount she fixed as $69; and she added that the balance was to be paid by the federal government. Therefore, as the parties agree, the provision in the award for any greater sum for this item of compensation is without support in the record. Under such circumstances, it is appropriate to direct the modification, rather than the annulment of the award. (27 Cal.Jur. § 220, at p. 587; *O. L. Shafter Estate Co.* v. *Industrial Acc. Com.*, 175 Cal. 522, 527 [166 P. 24].)

It is therefore ordered that the award be modified by the commission in accordance with the views herein expressed, and as so modified the award is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.

EDMONDS, J.—If, in this action, the insurer is estopped to deny liability, the specific provisions of a contract are of no effect. To avoid cancellation of a policy of insurance pursuant to its express terms, all that the insured needs to

show is the failure to receive the notice of cancellation and his reliance upon the local agent to tell him he had not paid the premium.

Sorenson is presumed to have known the conditions of his policy. (*Rice* v. *California-Western S.L.I. Co.*, 21 Cal.App. 2d 660, 670 [70 P.2d 516].) As the consideration for assuming the liability imposed upon him by law, it required the payment of a premium. In clear and unequivocal language it stated that, if the premium was not paid, the policy could be cancelled by "notice mailed to the address of this employer herein given." The policy also provided that "notice to any agent or knowledge possessed by any agent . . . shall not effect a waiver or change in any part of the policy or estop the Exchange from asserting any rights under [its] terms. . . ."

Under these circumstances, Sorenson had no legal right to rely upon the alleged practice of the local agent to notify him of delinquencies. It is firmly established that "[O]ne relying on a plea of estoppel must have been ignorant of the true state of facts. . . ." (*Moss* v. *Underwriters' Report, Inc.*, 12 Cal.2d 266, 273 [83 P.2d 503]; *Killian* v. *Conselho Supremo etc.*, 31 Cal.App.2d 497, 499 [88 P.2d 214]; *Rice* v. *California-Western S.L.I. Co., supra*, p. 669; *Maggini* v. *West Coast Life Ins. Co.*, 136 Cal.App. 472 [29 P.2d 263]; 10 Cal. Jur., pp. 636, 637; 10 R.C.L. pp. 696, 697.) Otherwise stated, it must be shown that the party asserting the estoppel was not only destitute of all knowledge of the true facts, but of the means of acquiring such knowledge. (*Boggs* v. *Merced Mining Co.*, 14 Cal. 279, 366; *Moriarty* v. *California W.S.L. Ins. Co.*, 22 Cal.App.2d 260, 268 [70 P.2d 684].) Obviously, when the insured knows that his policy may be cancelled by notice mailed to him at the address which he gave for that purpose, he has knowledge of the true facts.

Sorenson further knew that notice to the local agent could not change the terms of the policy. He also knew he had no legal basis for relying upon the past acts of the agent. This is apparent from his testimony that he ". . . guess[ed] it isn't the proper thing to do." He did not pay the consideration for the insurance provided by the contract but is now given its benefits notwithstanding his default.

I would annul the award against Truck Insurance Exchange upon the ground that the insurance provided by its contract had been cancelled before the date of the fatal accident.