[S. F. No. 5941.    In Bank.—May 27, 1914.]

## HELEN BELDEN, Respondent, v. UNION CENTRAL LIFE INSURANCE COMPANY (a Corporation), Appellant.

LIFE INSURANCE—WAIVER OF FORFEITURES—AUTHORITY OF GENERAL AGENT.—The waiver of forfeitures and the reinstatement of lapsed policies are within the apparent scope of the authority of a general agent of a life insurance company, but the company can place limitations on the power of such an agent in this connection if third persons are informed of the restriction.

ID.—GENERAL AGENTS—SCOPE OF AUTHORITY—EXPRESS RESTRICTIONS.—There is no peculiar magic in the title "general agent" which prevents an employer of such an agent from limiting his authority, although without such limitation his powers are great and ordinarily will support any of his acts or contracts which might have been done or executed by his principal.

ID.—INSURANCE AGENTS—LIMITATIONS ON POWERS—QUESTION OF FACT. An insurance company may, in its contract with the assured, limit the authority of any agent, and whether or not a general agent's powers have been so limited, or whether or not they have been waived by the conduct of the principal, are questions of fact, and the mere proof without contradiction that one has been made a "general agent" under the provisions of section 616 of the Political Code, does not make it a question of law.

ID.—ACTION ON POLICY—INSTRUCTION AS TO WAIVER OF FORFEITURES BY GENERAL AGENT.—In an action on a life insurance policy containing a provision that "no condition or provision of this policy shall be varied or altered by any one unless by written consent of the president or secretary of the company," it is error to instruct the jury that a general agent has the right to waive forfeitures and to accept money for premiums even if overdue.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    John Hunt, Judge.

The facts are stated in the opinion of the court.

W. S. Andrews, and Pringle & Pringle, for Appellant.

A. M. Kidd, Frohman & Jacobs, Titus, Creed & Dall, and A. H. Brandt, for Respondent.

THE COURT.—This is an appeal by the defendant, a life insurance company, from a judgment against it and from the order denying its motion for a nonsuit. The plaintiff is the widow of Roy K. Belden, deceased. When his death occurred there were five purported policies of insurance on his life, all issued by the defendant corporation. Two of these were paid, but the company denied liability upon the other three, being the one here in suit payable to his widow and two others upon which Georgeana Belden, Roy K. Belden's mother, is the claimant. The policy upon which Mrs. Helen Belden relies is numbered 312609 and is for the sum of two thousand dollars; the other two upon which Mrs. Georgeana Belden sued are numbered 289416 and 312608, the former being a five year term policy for one thousand dollars and the latter an ordinary life policy for two thousand dollars. The two policies last mentioned are involved in a separate action but the facts of the two cases are essentially the same.

Policy 312609 is of the type known as an "ordinary life" policy. It was issued November 30, 1905, and the annual premium payable November 30th of each year was $47.96. The first year's premium was paid on delivery of the policy and when the second year's premium became due, it was paid by a note dated November 30, 1906, and was renewed several times, but on December 26, 1907, it was returned to the company's principal office at Cincinnati as unpaid.

The insured, Roy K. Belden, resided in Germany and his brother Dan F. Belden held his power of attorney. On February 3, 1908, the latter called at the office of R. L. Stephenson in San Francisco for the purpose of paying all of the premiums due on the policies of his brother. At that time the premiums on all of the three policies mentioned above were past due. It is not disputed that Mr. Dan Belden offered to pay all that was due on the five policies and that after the amounts were figured the aggregate was found by Mr. Stephenson to be $156.80, due on four of the policies, the premium on the fifth having been paid, so that it was kept in force

until a later period in 1908.    There is a conflict of testimony with reference to the conversation between Mr. Stephenson, Mr. Belden, and Mr. Maclay (the bookkeeper and cashier) at that time.    Mr. Belden testified that he was asked about the condition of his brother's health and that he truthfully answered that, so far as he knew, it was good.    It appeared in evidence that his brother had been ill for many months and the insured died five days after the payment was made.    Mr. Stephenson testified that he informed Mr. Dan Belden that a certificate of health would have to be filed before the reinstatement of at least one policy, and perhaps two besides, as he knew that one policy had lapsed and believed that to be the case with two others.    This part of the conversation was denied by Mr. Belden, who said that no definite statement was made about any of the policies lapsing except that he was told that possibly a health certificate would be required for one of them—not the one in suit in this action.    Of course the jurors were at liberty to accept either version of the conversation.    We mention this conflict in view of one of the instructions which will be discussed later.

On February 4, 1908, Mr. Maclay for Mr. Stephenson wrote to the secretary of the defendant corporation a letter containing the following language:

"I wish you would kindly look up policies Nos. 278278, 289416, 312608–9, Roy K. Belden, and inform us as to the standing of these policies.    We have accepted settlement on account of the renewals and premiums due for the year 1907, together with interest due."

It was stipulated that this letter reached its destination on February 10th, and that if certain officers of the defendant were present at the trial they would testify that the letter was turned over to a clerk and never brought to the attention of the president, vice-president, or secretary until February 17, 1908, when a letter from Mr. Stephenson announcing Dr. Roy K. Belden's death was received.    On February 18th the home office telegraphed Stephenson that only two of the Belden policies were in force and that the others were canceled. He was instructed in the telegram to return immediately any payments made on canceled policies.    This he promptly attempted to do, but Mr. Dan Belden refused to accept the return of the money.

An examination of the policy shows that upon it was a notice to the policy holder as follows:

"All payments due on this policy for premium or notes or interest upon notes given to the company, are payable at the office of the company, in the city of Cincinnati, or to the authorized agent of the company, on the production of the premium receipt (signed by the president, vice-president, secretary, or assistant secretary) or the note given in payment of premium.

"The contract of insurance between the parties hereto is completely set forth in this policy and the application for the same, and none of its terms can be modified, nor any forfeiture under it waived, save by an agreement in writing signed by the president, vice-president, secretary, or assistant secretary of the company, whose authority for this purpose shall not be delegated."

There was a provision in the policy that failure to pay any of the premiums due during the first three years would avoid and nullify the policy "without action on the part of the company or notice to the insured or beneficiary." There was also a statement in the contract that notes given for premiums with their conditions were made a part of the agreement.

Appellant directs our attention to the following instruction, the giving of which is assigned as error:

"The evidence shows that Robert L. Stephenson was general agent for defendant in February, 1908. As such general agent he had the right to waive forfeitures and to accept money for premiums even if overdue."

This instruction took from the jury the right to determine whether or not from the facts presented, the assured and the insurance company were bound by the terms of the policy irrespective of the acts of the general agent. The question for us to determine according to appellant is this: Can a general agent of a life insurance company waive forfeitures in the face of a prohibition in the policy itself of which the assured has knowledge? It is argued that the quoted instruction did not amount to a statement that Stephenson did in fact waive forfeiture, but that as general agent he had authority to do so, the jury being left to determine whether or not his acts constituted such waiver. If we put this interpretation upon the instruction, the question of law arises: Did the *status* of "gen-

eral agent'' give Stephenson the right to waive forfeitures in spite of the inhibition expressed in the policy? It is admitted by appellant that waiving forfeitures and reinstating lapsed policies is within the apparent scope of a general agent's powers. But, say appellant, that does not prevent a company from placing a limitation upon the general agent's authority if third persons are informed of the restriction. We believe this to be the true rule. The powers of a general agent are admittedly very great. "It may be laid down as a general rule that an agent with general authority, i. e., an agent who is authorized to take risks and enter into contracts of insurance without consulting the company, may waive any of the conditions contained in the policy, and his knowledge of facts material to the risk is the knowledge of the company." (16 Am. & Eng. Ency. of Law, 2d ed., p. 942.) "The extent of the agent's power to waive conditions and forfeitures is, of course, dependent on the extent of his authority to act for the insurer. If he is a general agent, his power to waive conditions and forfeitures is, according to the weight of authority, coextensive with that of the insurance company itself." (Cooley's Briefs on the Law of Insurance, p. 2478.) But these general rules do not prevent a company from limiting the powers of any agent, no matter what his rank or designation. It was said in the opinion in *Iverson* v. *Metropolitan Life Ins. Co.,* 151 Cal. 750, [13 L. R. A. (N. S.) 866, 91 Pac. 611] : "An insurance company can, like any other principal, prescribe limitations upon the power and authority of agents, and persons dealing with such agents with knowledge of the limitations upon their authority are bound by the restrictions imposed."

In *Fidelity & Casualty. Co. of New York* v. *Fresno Flume & Irrigation Co.,* 161 Cal. 468, [37 L. R. A. (N. S.) 322, 119 Pac. 646], this court adopted the opinion written by Mr. Justice Hall. In that opinion the law was clearly and unequivocally stated to the effect that an insurance corporation may, by its policies, limit the powers of its agents. At page 471 the following language is found:

"The policies delivered to and accepted by respondent were signed by the president and secretary of plaintiff, and countersigned by its general agent Bosworth. No evidence of the authority of Bosworth was given other than that he was the

general agent of the plaintiff, and none was given as to the
authority of Shepherd other than that he was the local agent
at Fresno, and by the terms of his employment had no author-
ity to change a policy in any way.

"It may be conceded that this was sufficient to clothe the
agents with ostensible authority coextensive with the business
intrusted to them, in the absence of any notice of a limitation
thereon. But the policies accepted and retained by defend-
ant contained the provision that 'No condition or provision of
this policy shall be varied or altered by any one unless by
written consent of the president or secretary of the company.'
This was a limitation upon the authority of agents of which
defendant had notice. That such provisions in policies are
valid has frequently been decided. The matter is discussed
at great length in *Northern Assurance Co.* v. *Grand View
Building Association,* 183 U. S. 308 [46 L. Ed. 213, 22 Sup.
Ct. Rep. 133], and it was there held (syllabus) that 'It is
competent and reasonable for insurance companies to make
it matter of condition in their policies that their agents shall
not be deemed to have authority to alter or contradict the
express terms of the policies as executed and delivered.' "

There is no peculiar magic in the title "general agent"
which prevents an employer of such an agent from limiting his
authority. Without such limitation his powers are great and
ordinarily will support any of his acts or contracts which
might have been done or executed by his principal. Mr. Jus-
tice Temple, in delivering the opinion of this court in *Wester-
feld* v. *New York Life Ins. Co.,* 129 Cal. 78, [61 Pac. 670],
said: "It is also said that whether a particular agent has
power to waive conditions is a question of fact. Plaintiffs
offered no evidence as to the authority of Hawes except the
policy, which expressly denied to him the authority to modify
the contract. The burden was upon plaintiffs. The title
'general manager,' for a specified territory, does not estab-
lish the particular authority required, especially after this ex-
press limitation, which was known to the insured." Com-
menting upon the position taken in some of the authorities
that "notice to the agent is notice to the company," he said:
"If this means that the company is bound unless it promptly
gives notice that it is not satisfied, and in time to enable the

insured to make his proof, it is clearly right and in accord with rules applicable alike to other transactions, but I see nothing in these decisions applicable to this case. Knowledge of the agent is not knowledge of the principal in matters not within the scope of the agent's authority. I see nothing unfair in such a limitation upon the authority of an agent as to matters involved here. To make such modification of the contract is not usually expected of an agent, and the power to do so is not implied in what may be called his usual ostensible authority." The clause of section 616 of the Political Code, declaring that the process agent shall also be "deemed in law a general agent," does not prevent the company from inserting in the policy stipulations that such agent shall have no power to waive forfeitures or alter the terms of the policy after it is issued. It was not intended to forbid such stipulations. The assured has notice of them and therefore they bind him. The question whether such agent may afterward do things which create an estoppel against the company, or which have the effect of a new contract of insurance, does not arise here and it is not considered.

The latest decision of this court called to our attention is *Sharman* v. *Continental Ins. Co.*, 167 Cal. 117, [138 Pac. 711], where the following language was used:

"An insurance company, like any other principal acting through agents, may limit their powers, and this was done by defendant by clear and plain terms in the policy here in question. When plaintiff accepted it, it became the contract between him and the company, and he was charged with knowledge of its terms, among others, the limitations upon the power of the agent of the company. (*Westerfeld* v. *New York Life Ins. Co.*, 129 Cal. 68, [58 Pac. 92, 61 Pac. 667]; *Cayford* v. *Metropolitan Life Ins. Co.*, 5 Cal. App. 715, [91 Pac. 266]; *Blunt* v. *Fidelity & Casualty Co.*, 145 Cal. 268, [104 Am. St. Rep. 34, 67 L. R. A. 793, 78 Pac. 729].)

"Provisions in policies limiting the authority of agents to bind the company by waiver of conditions therein have been the frequent subject of consideration by the court. It is held with practical unanimity that, notwithstanding such limitations upon the authority of these agents, conditions in policies may be waived by some agents of the company, and

under some circumstances will be deemed to have been waived notwithstanding the method provided for in the policy has not been pursued. But the authority of an agent to effect the waiver in the face of such a limitation as here is not vested in every agent who may represent the company. Unless such authority be given to some particular agent to do so, then, as a general rule, it is only agents of the company who are empowered to issue and deliver policies who may be regarded as having the power to waive conditions and forfeitures. They are the general agents of the company, and vested with full authority to consummate the contract of insurance, and are deemed, as such representatives, to have the same power to waive conditions as the companies themselves. As to the character of agents authorized to waive such conditions, it is said, in 3 Cooley's Briefs on Insurance, p. 2480: 'This rule includes all persons empowered to conclude contracts of insurance without first referring the negotiations to their principals, such as those which have "full power to effect such contracts of insurance, to fix rates of premiums, to consent to changes, to make indorsements, and to cancel policies.' '' It may also include those declared by statute of a state to be general agents.''

The last sentence of the quoted language must of course be read in connection with the rest of the text and is applicable to the case of a general agent whose powers are not limited by the contract of insurance itself. Reason and the weight of decision both support the doctrine that an insurance company may, in its contract with the assured, limit the authority of any agent, and whether a general agent's powers have been so limited or not, or whether they have been waived by the conduct of the principal or not are questions of fact, and the mere proof without contradiction that one has been made a ''general agent'' under the provisions of section 616 of the Political Code, does not make it a question of law. The assailed instruction was therefore erroneous and the giving of it constituted material error for which the judgment must be reversed.

The other assignments of error are based upon the alleged insufficiency of evidence to support certain findings. As the evidence which may be adduced at the next trial, if there

shall be one, may be quite different from that presented at the first one, we need not pass upon these other questions.

The judgment is reversed.

· Rehearing denied

Beatty, C. J., does not participate in the foregoing.