[Civ. No. 4270.  Second Appellate District, Division One.—July 30, 1923.]

JOE KUGLER, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] EMPLOYER'S COMPENSATION INSURANCE—CONDITIONS OF POLICY—ORAL WAIVER BY MANAGER—EVIDENCE.—Where an employer's liability policy issued by the State Compensation Insurance Fund insures a window-cleaning company against loss or liability to employees as the result of injuries received at certain specified locations and provides that additional locations will become effective only after notice thereof has been accepted in writing and an indorsement of such locations, signed by the manager, has been attached to the policy, such condition relating to additional locations might be orally waived by the manager of the Fund; and in this proceeding in *certiorari* to review an award of the Industrial Accident Commission against petitioner, based upon the commission's determination that the Fund was not an insurance carrier for petitioner at the new location where the employee was injured, the evidence failed to show a waiver by the Fund, or its duly authorized representative, of the condition of the policy relating to additional locations.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.  Award affirmed.

The facts are stated in the opinion of the court.

Paul Blackwood for Petitioner.

A. E. Graupner, Warren H. Pillsbury, Frank J. Creede, B. E. Pemberton and W. J. O'Connor for Respondents.

HOUSER, J.—This is a *certiorari* proceeding brought to this court for the purpose of reviewing an order of award made by the Industrial Accident Commission in connection with a policy of insurance issued by the State Compensation Insurance Fund.

On April 6, 1922, the Fund issued its policy of insurance to petitioner Joe Kugler, doing business as the Broadway Window Cleaning Company, insuring him against all loss or liability to his employees by reason of injuries received by them, or from death resulting from such injuries, sus-

tained while such employees were engaged in the course of their employment with the insured. The policy specified the particular places at which the employees of petitioner might perform their work, but also contained a further provision to the effect that, under certain conditions, other such places might be added thereto—the language thereof being as follows: "Anything in this policy to the contrary notwithstanding, it is understood and agreed that this policy shall not extend to or cover injuries or death sustained by any employees other than those engaged in connection with work at the following locations, but additional locations may be added by indorsement to the policy when description of such additional locations are furnished to the Fund by Broadway Window Cleaning Company (an individual). Insurance covering work in connection with such additional locations will be effective only when, and from the date notice is accepted in writing by the Fund. . . . Nothing herein contained shall be held to waive, alter, vary or extend any of the stipulations, agreements or limitations of this policy, other than as above stated." The policy also contained the following standard provision: "No condition or provision of this policy shall be waived or altered except by indorsement attached hereto signed by the Manager and countersigned by a duly authorized representative of the Fund; nor shall notice to any representative, nor shall knowledge possessed by any representative, or by any other person, be held to effect a waiver or change in any part of this policy."

On September 11, 1922, one of the employees of petitioner was injured while working at a location neither specified in the original policy nor later accepted in writing by the Fund, nor added to the policy by any indorsement thereto. At the hearing of the matter before the Industrial Accident Commission the evidence tended to show that at the time the policy was procured in the office of the Fund, in reply to an inquiry made by petitioner as to the necessary procedure to properly cover petitioner by insurance as to any locations to be added to the policy, it was stated in effect that all that was necessary was for petitioner to telephone the new location to the office of the Fund, and thereupon the coverage would immediately ensue. The testimony of petitioner on that point was as follows: "They

told me when I took the policy out that the minute I got a job, I should call up and it is covered right away immediately as soon as I called them up." And again: "When I took out the policy I asked them; I took the policy out from a young lady and she told me that is all that is necessary, to call up the State Compensation, and they would take care of it."

It further appears from the evidence that in the latter part of the month of June or early in the month of July, 1922, an employee in the office of petitioner telephoned to someone in the office of the Fund regarding a new location (and being the place at which petitioner's employee received the injury) for the purpose of having such new location added to petitioner's policy of insurance—the testimony being as follows: "Q. When you called the Fund that day did you have any difficulty in getting the right person right away? A. No, there was not any difficulty that I recall; a lady's voice answered and took the notation and said everything would be O. K."

In substance it was also shown by the evidence that the place where the accident occurred was not at a private residence but that it was at a business building and came under the restriction quoted in the policy; that the Fund never made acceptance in writing of the new location, nor was any such acceptance ever received by the petitioner. Neither was any indorsement of such new location, signed by the manager and countersigned by a duly authorized representative of the Fund, or by either of them, ever attached to the policy. There was testimony to the effect that other new locations had been telephoned to the Fund, upon some of which there had been written acceptance, followed by properly authenticated indorsements to be attached to the policy. There was also testimony to the effect that the amount to be paid as premium on the policy depended upon the pay-roll of petitioner, and that petitioner paid the premium upon his policy in accordance therewith. But there was no evidence tending to show that any premium was ever paid on account of a pay-roll covering the location where the accident occurred. No direct evidence was introduced by the Fund refuting any of the testimony of petitioner or his witnesses, and the effect of such evidence stands uncontroverted, excepting as to certain claimed

deductions, inferences and presumptions—as to which, in view of the conclusion reached by this court regarding other issues herein, it is not deemed of vital importance that they be thoroughly considered.

The Industrial Accident Commission reached the conclusion that, as far as the new location was concerned, the Fund was not an insurance carrier for petitioner, and thereupon made its award against petitioner and in favor of the injured employee in a fixed sum as liability for accrued damages and in an additional sum as a weekly liability thereafter until the termination of the disability of the employee, or until further order of the commission.

[1] The principal question here to be determined is that of the alleged waiver by the Fund (as a part of its insurance contract) of the written acceptance of the new location and the indorsement upon the policy of such waiver or alteration, signed by the manager and countersigned by a duly authorized representative of the Fund.

That in certain circumstances an insurance company may waive any of the provisions contained within its contract of insurance is not doubted. It is contended in this case that there was a waiver as to the clause that "insurance covering work in connection with such additional locations will be effective only when, and from the date notice is accepted in writing by the Fund," and the cases of *Carroll* v. *Girard Fire Ins. Co.*, 72 Cal. 300 [13 Pac. 863], and *Mackintosh* v. *Agricultural Fire Ins. Co.*, 150 Cal. 447 [119 Am. St. Rep. 234, 89 Pac. 102], are cited as authority. In the case first cited the contract required the assured, in case of loss, to forthwith give notice thereof to the insurer and to produce a certificate of preliminary proof from a notary—neither of which acts was performed. The insurer, however, joined with the insured in arbitration proceedings which, under the terms of the policy, were to be commenced *after* proof of loss had been received. It was held that such conduct on the part of the insurance company constituted a waiver, notwithstanding the fact that the policy also contained a provision to the effect that no condition of the policy should be waived except by written indorsement by the president or the secretary of the insurer. In the second case it was held that a failure of the general agents of the insurance company

to accurately describe the property on an indorsement slip attached to the policy was the fault of the company and that it should be estopped from taking advantage of the defect; also that general agents have power to orally waive conditions in the policy, notwithstanding stipulations in the contract of insurance requiring waivers to be in writing and indorsed upon the policy.

It will be remembered that the contract here requires that any added locations must be first acknowledged in writing, to be followed by an indorsement on the policy signed by the manager and countersigned by a duly authorized representative of the Fund. The evidence is not that at the time the policy was issued either the manager or any other duly authorized representative made or attempted to make any waiver of any provisions of the policy, or, indeed, that either of such persons either said or did anything in that connection. The only testimony in that regard is that "they told me when I took the policy out that the minute I got a job I should call up and it is covered right away immediately as soon as I called them up"; also "when I took out the policy I asked them; I took the policy out from a young lady and she told me that is all that is necessary, to call up the State Compensation, and they would take care of it." No evidence was adduced from which it might be determined what authority, if any, the young lady possessed to make any such statement. Certainly there was none to show that she was either the manager or any duly authorized representative of the Fund. With respect to the telephonic communication regarding the new location, the evidence is also singularly lacking—the evidence being that "a lady's voice answered and took the notation and said everything would be O. K." The lady was not even identified as being connected in any way with the office of the Fund, much less as being the manager or a duly authorized representative thereof. Neither is it claimed that any authorized agent of the company was ever notified of any of the facts going to make up the alleged waiver, or that such officer had any independent knowledge thereof.

Such cases as *Sharman* v. *Continental Ins. Co.*, 167 Cal. 117 [52 L. R. A. (N. S.) 670, 138 Pac. 708], *Belden* v. *Union Central Life Ins. Co.*, 167 Cal. 740 [141 Pac. 370], and *Madsen* v.

*Maryland Casualty Co.*, 168 Cal. 204 [142 Pac. 51], are authority for the rule that in circumstances such as are disclosed by the evidence in this case no waiver results. In the Sharman case the policy was subject to the condition that it was void if the stipulation therein contained, that the insured was the sole and unconditional owner of the property, was untrue; and the contract further provided that "no officer, agent or other representative of this company shall have power to waive any provision or condition in this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added thereto," and as to such provisions or conditions such officer, agent, or representative should not be deemed to have waived them unless such waiver was written upon or attached to the policy. The soliciting agent for the insurance company who procured the policy to be issued to the insured had drafted an agreement between the insured and a third person by which the insured had agreed to sell on the installment plan the property covered by the policy. The agent had also prepared the written application of the insured for the insurance which contained a statement that the insured was the sole and unconditional owner of the property, and the agent had assured him that it was proper and correct for him to sign such a statement. In considering the case the court said, in part: "But the authority of an agent to effect the waiver in the face of such a limitation as here is not vested in every agent who may represent the company. Unless such authority be given to some particular agent to do so, then, as a general rule, it is only agents of the company who are empowered to issue and deliver policies who may be regarded as having the power to waive conditions and forfeitures. . . . But Wade [the agent] was merely a soliciting agent of the defendant. He had no authority, actual or ostensible, to waive conditions in the policy. This was not within the scope of any apparent authority he possessed, and his knowledge of the true condition of the title of plaintiff, not communicated to the general agent of the company, was not the knowledge of the latter. . . . He had no authority to consummate the contract of insurance and issue the policy, and it is only an agent of this character who could waive con-

ditions notwithstanding the apparent limitations of the power of all agents to waive the conditions or stipulations of a policy. . . . (Citing cases.)'' The same principles are upheld in the Madsen case, 168 Cal. 204 [142 Pac. 51]. In the Belden case, a general agent of an insurance company attempted to waive forfeitures and to reinstate lapsed policies of life insurance. The policy contained a provision to the effect that such an act could be performed only by an agreement in writing signed by certain officers of the company whose powers in that regard could not be delegated; and it was held that such a limitation in the contract on the power of the general agent was binding upon the assured.

While the law appears to be well settled that in the instant case the manager of the Fund might have orally waived the condition of the policy which required that additional locations would become effective only after notice thereof had been accepted in writing and an indorsement of such locations, signed by the manager, etc., had been attached to the policy, there is no evidence of the fact that he either personally did so or that he ever had any knowledge that any other person had attempted to do so for him. The contract of insurance here specially limits the liability of the Fund to certain locations and to such other locations as it may thereafter accept in writing and subsequently thereto indorse upon the contract. That some unauthorized person in the office of the Fund assumed to alter the terms of the contract, either in the manner of acceptance of new locations or otherwise, while unfortunate in its result upon petitioner, cannot affect the terms of the contract as between the parties thereto. The insurance contract in that regard does not differ from any ordinary contract between individuals. It cannot have new terms inserted therein nor original terms altered or withdrawn, save with the consent of the contracting parties or their duly authorized agents acting within the scope of their authority. The ''young lady'' in this case was not, so far as the evidence shows, duly or at all authorized to state to petitioner that the notice by telephone of a new location, without written acceptance by the Fund thereof, would be a sufficient compliance with the terms of the policy with respect to new locations, nor could there be any waiver of the condition in the contract to which reference has been

made by any person other than the manager countersigned by a duly authorized representative of the Fund.

The award against the petitioner is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by petitioners to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1923.