[Civ. No. 6509.   Third Dist.—April 28, 1941.]

JULIUS PAULSON, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, GEORGE WALSH et al., Respondents.

Shipper & Benard for Petitioner.

Everett A. Corten, Eldon B. Spofford and Keith & Creede for Respondents.

THOMPSON, J.—The petitioner seeks to annul an award of the Industrial Accident Commission against him, and to

reverse the order relieving the Pacific Indemnity Company from liability on account of personal injuries received by a workman in his employ. The workman, George Walsh, was employed by the petitioner in a logging enterprise in Siskiyou County when a dead limb fell from a tree and struck him on the head. The commission determined that the petitioner's separate trucking and garage businesses at Kelseyville, Lake County, were all that were covered by the policy. This proceeding merely involves a construction of the policy to determine whether the workmen engaged in the logging enterprise were also insured thereby.

Julius Paulson conducted a hauling and trucking business and also a garage at Kelseyville, in connection with which he operated twenty-eight trucks and possessed other equipment incident thereto. For twenty years he had been engaged in separate logging enterprises in Siskiyou County and elsewhere. His wife testified that, at the time of the accident, they employed 25 or 30 workmen in the logging enterprise at Hilt. It does not satisfactorily appear that the petitioner's logging enterprises were previously covered by the policies insuring his trucking and garage businesses. Prior to June, 1939, the trucking and garage enterprises were insured by the Employers' Liability Assurance Corporation, Ltd., through its agent, Mrs. Grace I. Morgan, who resides at Napa. That company instructed her to cancel the petitioner's policy on account of frequent automobile accidents. She proposed to transfer the policy to the Pacific Indemnity Company, at San Francisco. Its inspector, Harry B. Barnes, was sent to Kelseyville in the spring of 1939, to investigate the businesses. Mr. Paulson was then absent. The agent interviewed the chief mechanic and Mrs. Paulson who informed him regarding the trucking, hauling and garage businesses and showed him the equipment. He was told they were engaged in trucking and hauling fruit, cement, oil, merchandise and various products, including some lumber and lumber products from Hilt and Scotia which were delivered to the fruit-packing establishments. Mr. Barnes definitely stated he was not told they were engaged in a logging or timber enterprise, although Mrs. Paulson did say they were hauling from Hilt some manufactured lumber and lumber products. The agent subsequently talked with Mr. Paulson who made substantially the same statement to him, but failed to tell him he was engaged

in a logging enterprise. There is a conflict of evidence in regard to the essential details of that conference. Mr. Paulson testified that he did inform Barnes he was engaged in a logging business at Hilt.

The Pacific Indemnity Company issued the policy June 26, 1939, for the period of one year. It contained the following stipulations:

"Classification of Operations.

"Truckmen—N.O.C.—including Drivers, Chauffeurs, and their Helpers; stablemen, blacksmiths and repairmen.

. . . . . . . . . . . .

"Outside Salesmen, collectors and messengers (wherever engaged) who do not deliver merchandise.

"Drivers and Drivers' Helpers (if not included in 1) wherever engaged.

"Chauffeurs and Chauffeurs' Helpers (if not included in 1) wherever engaged."

The policy also included the following clauses:

"*This Employer is conducting no other business operations at this or any other location not herein disclosed*—except as herein stated: NO EXCEPTIONS."

"The premium is based upon the entire remuneration earned, during the Policy Period, by all employees of this Employer engaged in the business operations described in said Declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto; . . . If any operations as above defined are undertaken by this Employer but are not described or rated in said Declarations, this Employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with Condition C hereof, at the rates, and in compliance with the rules, of the Manual of Rates in use by the Company upon the date of issue of this Policy."

The minimum quarterly premium was fixed at $94. The estimated average premium was specified as $100. Two bills for premiums which were previously presented to the insured for $115.39 and $123.40 respectively contained no mention of charges for workmen engaged in logging. They contained only charges for trucking employees and garage workmen. The payroll lists furnished by the insured contained

no mention of workmen engaged in the logging enterprise. It appears from the evidence that a much higher rate of insurance was charged for workmen employed in logging. That pursuit is recognized as unusually hazardous. Mrs. Paulson testified that they had 25 or 30 men employed in the logging business. It appears that if those workmen had been included in the policy the premium would have necessarily been increased at least four-fold.

George Walsh, who was employed by the insured at Hilt in the capacity of a woodsman in the logging enterprise, was injured September 21, 1939, as a result of being struck on the head by a dead limb falling from the top of a tree. A claim was filed against the employer and the Pacific Indemnity Company. By stipulation between the petitioner and the insurer, the company advanced to the workman compensation payments to be adjusted after the commission had determined the liability of the respective parties. March 8, 1940, an award was made against the Pacific Indemnity Company. Julius Paulson was then relieved from liability. A rehearing was subsequently granted. May 3, 1940, an award of $14.94 per week was made in favor of George Walsh against Julius Paulson only. The Pacific Indemnity Company was relieved from all liability on the ground that the logging business was not covered by the insurance policy. A petition for rehearing from that order was denied. This petition for *certiorari* was then filed in this court. The amount of award is not questioned. The sole problem to be determined is whether the policy covers the logging enterprise in which the workman was engaged at the time of his injury.

The petitioner relies chiefly on the clause in the policy previously quoted, to the effect that if any operations *"as above defined"* are thereafter undertaken by the insured "which are not described or rated in said declarations" the premiums shall be finally adjusted accordingly.

We are of the opinion we are bound by the findings and judgment of the Industrial Accident Commission in this proceeding. Assuming that the language of the policy leaves an uncertainty as to whether the petitioner's separate logging business was insured, there is ample evidence to support the conclusion of the commission that it was not the mutual intention of the respective parties to include that enterprise in the compensation insurance policy. The very language of

the policy and the amount of premiums to be paid appear to refute that theory. The petitioner had been engaged in logging enterprises for twenty years. He should be charged with knowledge that it is an unusually hazardous business and that the premiums for insuring the workmen engaged therein would be proportionately higher than those required to cover a trucking or garage business. The policy does not mention a logging enterprise in its classification of workmen insured. The omission to include workmen engaged in logging, under the circumstances of this case, seems significant. The petitioner had 25 or 30 men so employed at the time the policy was issued. The policy specifically enumerates truckmen and their drivers, chauffeurs and helpers; salesmen, collectors and messengers; stablemen, blacksmiths and repairmen. The policy then declares that "This employer is conducting *no other business operations* at this or any other location not herein disclosed." The representatives of the insurance company testified they had no knowledge of the fact that the insured was conducting a logging enterprise, although they did know he was hauling manufactured lumber and lumber products from Hilt and other timber camps. There is a clear distinction between conducting a logging enterprise and merely hauling the manufactured products of a lumbering mill or camp.

A construction of the clause in the policy relied upon by the petitioner does not require this court to determine as a matter of law that the policy covers any other enterprises in which the insured may engage. It appears to cover only such other operations as are similar to the ones enumerated in the classifications specifically stated. That paragraph first states that the premiums are based on the remuneration earned by "all employees . . . *engaged in the business operations described*", and that "if any operations *as above defined* are undertaken", although they are not specifically rated, *the employer* agrees to pay the premium therefor in accordance with the rules of the company at the time of final adjustment of the claim.

We assume that the hauling of lumber or other manufactured products of timber may be incident to a logging business. But it does not follow that a logging enterprise is merely incidental to the business of hauling. The evidence abundantly shows that the logging business is a much more

hazardous occupation, and that it is entirely different and distinct from a trucking or hauling business.

In the case of *National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 220 Cal. 642 [32 Pac. (2d) 356], an award against the insurance company was reversed on the statement that the policy which insured against injuries sustained by "truckmen and chauffeurs" did not cover the operating of a "power shovel". The court there said:

"We are asked to extend the terms of the policy to an employee who was not mentioned in the policy and who was engaged in an entirely different and distinct line of employment from those specified therein. That this cannot be done we think is clear from the authorities above cited, as well as from the following: *Western Indemnity Co.* v. *Industrial Acc. Com.*, 43 Cal. App. 487 [185 Pac. 306]; *Kugler* v. *Industrial Acc. Com.*, 63 Cal. App. 308 [218 Pac. 472]; *Ocean A. & G. Corp., Ltd.*, v. *Industrial Acc. Com.*, 104 Cal. App. 34 [285 Pac. 707]."

It is true that insurance policies are subject to the same rules of construction which apply to other contracts; that they should be interpreted to give effect to the mutual intention of the respective parties, and that uncertain or ambiguous language contained therein should be construed most strongly against the party who prepares the contract. (*Maxfield Wilton, etc.*, v. *Industrial Acc. Com.*, 19 Cal. App. (2d) 606 [65 Pac. (2d) 1354].) But in the present proceeding the record satisfactorily shows that there was no *mutual* understanding that the employees of the petitioner who were engaged in a separate logging business were intended to be included in the specification of classes of workmen covered by the policy. Certainly there is ample evidence to support the contrary finding of the Commission in that regard.

The award is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing was denied May 27, 1941.

Petitioner's application for a hearing by the Supreme Court was denied June 26, 1941.