Under the provisions of the insurance policies involved, and under the facts of the case, the Industrial Board (now State Board of Workmen's Compensation) erred in finding that the accidental injury suffered by the employee was covered by the policy of insurance issued by the United States Fidelity 
Guaranty Company and not by the one issued by the Continental Casualty Company; and the judge of the superior court erred in affirming the award.
 DECIDED DECEMBER 4, 1943.
Cornell-Young Company engaged in several businesses at several locations. Its workmen's compensation insurance for one business and location was covered by a policy issued by the United States Fidelity Guaranty Company, and for another business and location by a policy issued by the Continental Casualty Company. One of its employees, George A. Stubbs, suffered an injury arising out of and in the course of his employment and a hearing was had for the purpose of determining whether the injury arose out of the business and location covered by the United States Fidelity Guaranty policy or that covered by the Continental policy. The board found that the employee was not injured by an accident arising out of employment covered by the Continental policy, and that he was injured by an accident arising out of the employment covered by the United States Fidelity Guaranty policy, to which finding and award the United States Fidelity 
Guaranty Company excepted upon the ground that the finding that the accident arose out of employment covered by its policy was unauthorized. The superior court affirmed the board's findings and the United States Fidelity Guaranty Company excepted.
The case was tried on the following agreed statement of facts:
"Mr. George A. Stubbs received an accidental injury on May 1, 1942, when he was an employee of Cornell-Young Company for which he is entitled to receive compensation from Cornell-Young Company. On or about August 10th he was sufficiently recovered to return to work, but his physician reports that he cannot yet determine whether Mr. Stubbs will have a permanent handicap and if so the percentage of handicap. The only purpose of the present hearing is to determine whether either or both of the policies of insurance issued by the two companies above named cover the injuries sustained by Mr. Stubbs. *Page 285 
"Mr. W. A. Young is president and Mr. G. P. Jones is vice president of Cornell-Young Company, and together they have charge of all the operations of the company. From time to time each or both give personal supervision to first one job or business enterprise of the company, and then to another, but as a general rule the particular jobs and enterprises conducted by the company are directly supervised by superintendents or other persons on the ground who are selected and put there by Cornell-Young Company.
"On May 1, 1942, the date on which Mr. George A. Stubbs was injured, Cornell-Young Company was engaged in several different jobs or enterprises. On that date they were engaged in a permanent operation which they designated `The Ready Mix Plant,' which was located on West Express Alley and 5th Streets in Macon, Georgia. This is the location which was described in the policy of insurance written by the United States Fidelity Guaranty Company as `5th Street, Macon, Georgia.' On that date they also had in operation a job or enterprise which was being performed under contract with the Reynolds Corporation, which corporation operates the Naval Ordnance Plant located five or six miles south of Macon, Georgia, on the Houston Road. This was the location which was described in the policy issued by the Continental Casualty Company as `Reynolds Corporation Fuse Loading Plant, Macon, Georgia,' the only location described in the Continental Casualty Company policy. From time to time Cornell-Young Company has other contract jobs or enterprises in progress both within and outside the State of Georgia, and on May 1st had other contract jobs in States other than Georgia.
"On May 1, 1942, there was in effect a policy of insurance issued by the Continental Casualty Company which named as the location of work places `Reynolds Corporation Fuse Loading Plant, Macon, Georgia.' The job at the Fuse Plant was commenced about March 5, 1942, and was expected to last and did last approximately three months.
"There was also in effect at that time a policy of insurance issued on May 8, 1941, by the United States Fidelity Guaranty Company, which named as the location of the work places, `Smithsonia, near Macon, Georgia, and Mulberry Street, Macon, Georgia, and 5th Street, Macon, Georgia.' The jobs or enterprises which had been undertaken at Smithsonia, Georgia, and Mulberry Street, Macon, *Page 286 
Georgia, had terminated some time before May 1, 1942, and the only location of work places named in the policy of the Fidelity Guaranty Company which was being operated at that time was the one at 5th Street, Macon, Georgia. At the location named in the policy `5th Street, Macon, Georgia,' was being operated the enterprise known as the Ready Mix plant, and this enterprise had been in continuous operation for about three years. Although the operation of the Ready Mix plant was of secondary importance to the main business of contracting in was intended by the company as a permanent location and enterprise. The classification named in the policy issued by the United States Fidelity Guaranty Company, `sand and gravel diggings,' and the subheads thereunder, apply to jobs or enterprises other than the Ready Mix Plant, all of which had been completed prior to May 1st, 1942. The pertinent portions of both of said policies of insurance will be attached to this stipulation or put in evidence by a separate stipulation.
"Cornell-young Company kept a separate payroll on the employees for each separate job or enterprise, though they kept only one set of books at their main offices in the First National Bank Building. On these books there was a separate ledger account showing the payroll and other receipts and disbursements for the enterprise at the Fuse Plant, and another separate ledger account showing similar items for the enterprise at the Ready Mix Plant. Similar separate records were kept with reference to other special jobs and enterprises in which the company engaged from time to time.
"In addition to the locations already mentioned, and other special contract locations, Cornell-Young Company rented and used a storage yard with some storage sheds or buildings thereon which was located on Forsyth Street just beyond Monroe Street in the City of Macon about two miles distant from the Ready Mix Plant and five or six miles distant from the Fuse Plant outside the city. In this storage yard Cornell-young Company would keep at various times its road machinery, scrapers, concrete mixers, cranes, tools of various kind, and in short any other equipment owned by them, which was then at or near Macon, Georgia, and not actively engaged in use in connection with any of its operations. Cornell Young Company had no compensation policy of insurance which specifically named this storage yard as one of the work places, although *Page 287 
the code or manual for determining rates and classifications for workmen's compensation policies, which is approved and in general use in the State of Georgia, provides under Code No. 8227 a classification known as `Contractors permanent yard — for maintenance of equipment or storage of materials.' The Cornell-Young Company did not employ any person or persons to work regularly at the storage yard, and kept no separate ledger account for the storage yard.
"Mr. George A. Stubbs had worked continuously for the Cornell-Young Company for about one year before May 1, 1942, and had done some work for the company before that time. Mr. Stubbs had been on a contract job for Cornell-Young Company in South Carolina, but returned to Macon and was not [went] to work at the Ready Mix Plant on April 18, 1942, and on May 1, 1942, he was carried on the payroll of the Ready Mix Plant. Mr. Stubbs was employed as a crane operator, and was so classified. This was true of his employment in South Carolina and also of his employment at the Ready Mix Plant on May 1st. In discharging his duties as crane operator he was required to move sand and stone from freight cars and stock piles to the bins, and any other loading or moving which had to be done with a crane.
"The business carried on at the Ready Mix Plant was the mixing of concrete to be sold at retail to customers in and near Macon, the only business in which the company was engaged at from a permanent location or other than under special contract arrangements, except the administrative office of the company was located in an office building in the City of Macon.
"The executive officers of Cornell-Young Company, Mr. W. A. Young and Mr. G. P. Jones, stayed at the administrative office in the First National Bank Building and from this office the general affairs of the company, including supervision of all the jobs or enterprises, were carried on. The main business of Cornell-Young Company was that of construction jobs by contract, and the Ready Mix business was added as a business of secondary importance to the main business of contracting. Occasionally where the company had a special contract in or near Macon ready mixed concrete would as a matter of convenience be delivered to the job from the Ready Mix Plant. This was unusual, but on May 1st ready mixed concrete was being delivered from the Ready Mix Plant to the Fuse *Page 288 
Plant job. Ordinarily the concrete for a special contract job is mixed at the location of the job entirely independent of the Ready Mix Plant.
"Cornell-Young Company has no regularly employed manual labor in any location in the corporate limits of the City of Macon except the employees at the Ready Mix Plant, and it was customary for Cornell-Young Company to call on the employees who were located at the Ready Mix Plant to do other jobs which were minor in their nature which were to be done in Macon even though such jobs took them off of the premises of the Ready Mix Plant, or were done for the benefit of some other job or enterprise of the Cornell-Young Company. Cornell-Young Company had occasionally, whenever the need arose, previous to this accident, sent one or more of the employees at the Ready Mix Plant over to do small jobs at the storage yard in connection with loading or transferring equipment or materials to other jobs. The largest truck owned by Cornell-Young Company, which was used to move heavy machinery and other unusually heavy loads, was generally kept on the premises of the Ready Mix Plant as a matter of convenience, and when this truck would be needed to haul machinery from the storage yard to one of the jobs, or for shipment, or for any other purpose, Cornell-Young Company would call on one of the drivers of one of the mixer trucks from the Ready Mix Plant to drive the big truck. In such cases where any employees from the Ready Mix Plant were used to drive the truck for such purposes, or any of the men employed at the Ready Mix Plant were used at the storage yard, they would ordinarily be used at hours which would cause the least interruption of the work at the Ready Mix Plant, and if it were necessary to use the big truck continuously for some time, or if they had to use employees steadily at the storage yard for the benefit of another job for a considerable period of time, Cornell-Young Company would ordinarily have called in men from the job for which the work was to be done, or would have hired special men for that purpose, or, if they used men from the Ready Mix Plant, they would have transferred them to the payroll of the job to which the equipment was being moved. In other words, it was a matter of convenience and economy, and if the job was small, and would not interfere unduly with the regular duties of the employees of the Ready Mix Plant, they would not be transferred to another payroll *Page 289 
but would be used within [without] calling in men from a distance when their men were available in the City of Macon. On other occasions when the job is one that will take a large crew a substantial amount of time it is carried on the payroll of the job for whose benefit the employees are being used. Obviously there are times when the work cannot be related to any particular job, and in such cases the men are carried only on the Ready Mix Plant payroll.
"When Mr. George A. Stubbs was employed at the Ready Mix Plant on April 18th, and up to the date of his injury on May 1st, he had not been advised that he would be expected to perform any duties except that of crane operator at the Ready Mix Plant, or duties incidental thereto at the Ready Mix Plant, and he had not during that period been requested to do any other job, and did not know that the employees at the Ready Mix Plant were expected to do other odd jobs at the storage yard or elsewhere. However, Mr. Stubbs had been in the employ of Cornell-Young Company for several years and knew that the duties of the employees were not always confined to the employee's particular classification.
"The job or enterprise which was being conducted by Cornell-Young Company at the Fuse Plant was in the construction of roadways and sidewalks at that plant. Some of the roads were being constructed of dirt and clay, and others of gravel, and some of concrete. In constructing these roads they had to have large quantities of clay, gravel, and sand, and for this purpose were using at the Fuse Plant a crane with a clam shell.
"Mr. G. P. Jones about May 1st was giving a large part of his time to the Fuse Plant job and discovered that there was some clay or gravel which had to be moved at the Fuse Plant on which a shovel boom would be better than the clam shell which had been used, so he had been discussing getting the shovel boom out from the storage yard. On the morning of May 1st he telephoned to the superintendent of the Ready Mix Plant and told him to send the necessary men and the large truck over to the storage yard on Forsyth Street and load the shovel boom which was located there on the big truck and send it out to the Fuse Plant for use on that job. It was understood between Mr. Jones and the superintendent of the Ready Mix Plant that he would send the men over to do this job in the late afternoon when it would not interfere with the operations *Page 290 
at the Ready Mix Plant. Following these instructions the big truck and several men were sent from the Ready Mix Plant, among them Mr. George A. Stubbs, and they arrived at the storage yard about 5 p. m. on May 1, 1942, and proceeded to load the shovel boom on the large truck to be sent out to the Fuse Plant job. When the boom was about two-thirds on the truck in some way it slipped and the end of the boom hit Mr. Stubbs, left leg just above the ankle and broke his leg. Subsequently the loading of the shovel boom was completed and it was carried on out to the Fuse Plant and used on that job. When Mr. Stubbs was sent over to the storage yard it was not intended that the shovel boom should be used at the Ready Mix Plant, or in connection with any activities or operations at the Ready Mix Plant, and the duties which Mr. Stubbs was performing at the time he was injured were in no way connected with or related to the regular duties of a crane operator at the Ready Mix Plant.
"The fact that it was a custom of Cornell-Young Company to use its Ready Mix Plant employees to do minor jobs in and around Macon, Georgia, including the loading and unloading of equipment at the storage yard of the company, was not explained or known to either of the insurance companies.
"No employee of the Ready Mix Plant who was engaged at the storage yard on May 1st when Mr. Stubbs was injured was carried on the Fuse Plant payroll, or on any payroll of the company except the Ready Mix payroll. The entire compensation paid to Mr. Stubbs on account of his employment from April 18th, when he was transferred from a job in South Carolina to the Ready Mix Plant, up to and including the day on which he was injured, was included in the Ready Mix Plant payroll, upon which the earned premium payable to the United States Fidelity Guaranty Company, and actually paid, was finally adjusted.
"No part of the wages paid or payable to Mr. Stubbs on account of his employment by the company was ever included in the Fuse Plant payroll, or in the estimated or actual payroll upon which the premium payable to the Continental Casualty Company was determined or paid. As previously stated, this was considered by the company as a minor job such as the employees of the Ready Mix Plant were customarily called on to perform, and for which no Compensation was paid other than the regular Ready Mix Plant wages. *Page 291 
If it had been a job which would have required a large amount of time the employee would ordinarily have been transferred from the Ready Mix Plant payroll to the Fuse Plant payroll, because the loading and hauling of the shovel boom was for the benefit of the Fuse Plant job, and could properly have been treated as an expense of the job. Because of its minor character, it was not so treated, or so set upon the books of the company, but was treated as an incidental expense of the company covered by the Ready Mix Plant payroll."
The material provisions of the policy issued by the plaintiff in error are as follows: 1. Item 2 gives the period of time which the policy covers "at the place where any operation covered hereby is conducted." 2. Item 3 gives the location as Fifth Street and provides, "all business operations conducted at or from the locations and premises' defined above: . . (5) operations not on the premises." 3. As a part of Item 3 the classification of operations was stated as follows: "Building material dealers — no secondhand materials — including local managers, drivers, chauffeurs and their helpers." 4. Item 4 provides that the foregoing description of employees shall include "all persons employed in the service of this employer in connection with the business operations above described." 5. Item 5 states that the employer is conducting no other operations at this or any other location. 6. Item 6 of the agreement is as follows: "This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with or in relation to, such work places." 7. The agreement also contained the following provisions: "A. The premium is based upon the entire remuneration earned, during the policy period, by all employees of this employer engaged in the business operations described in said declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith, whether conducted at such work places or elsewhere in connection therewith or in relation thereto. . . If any operations as above defined are undertaken by this employer but are not described or rated in said declarations, this employer agrees to pay the premium thereon at *Page 292 
the time of the final adjustment of the premium. M. The statements in Items 1 to 6 inclusive, in the declarations hereinafter contained, are true; those stated as estimates only are believed to be true. This policy is issued upon such statements and in consideration of the provisions of the policy respecting its premium and the payment of the premium in such declaration expressed." The Continental policy contained the identical provisions except that in it the location of work places was stated as "Reynolds Corporation Fuse Loading Plant, Macon, Georgia," and included a stated classification of operators named as "grading of land" and "street or road construction or reconstruction, paving or repaving, surfacing or resurfacing or scraping — all kinds."
The answer to the question here involved, to wit, which of the insurance carriers insured the injury to the employee, is to be found in the interpretation of the plain and unambiguous provisions of the insurance policies. The United States Fidelity Guaranty Company policy covers the location at Fifth Street, Macon, Georgia, and classified operations to be insured as "building material dealers . . including local managers, drivers, chauffeurs and their helpers." Construing the entire policy, including all provisions pertinent to the question, it means that operations of the employer were insured at Fifth Street, Macon, Georgia, or elsewhere, if they were operations of the employer in the capacity of a building-material dealer, or an operation in connection therewith, or necessary, incident or appurtenant thereto, or in relation thereto. Provision A, quoted above, does not enlarge this coverage. It is true that it provides that "if any operations as above defined are undertaken by this employer but are not described or rated in said declarations, this employer agrees to pay the premium thereon;" but this provision must be construed in the light of the immediately preceding provision that "the premium is based upon the entire remuneration earned . . by all employees . . engaged in the business operations described in said declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith . . or in relation thereto." There are numerous activities stated in the agreed statement of facts in which the employer engaged as *Page 293 
a business at and from the Fifth Street location, labor for which was put on the Fifth Street location payroll. Since the declaration in the policy covers only activities of building-material dealers it would be immaterial what other activities were carried on which were not connected with, incident or related to such operations. Only the operations declared in the policy are insured under the facts of this case. Unless shown to have been used in a different sense, "building material" means such as is essential for building any kind of house or structure. 12 C. J. S. 389; Great Eastern Casualty Co.
v. Blackwelder, 21 Ga. App. 586 (94 S.E. 843). The obvious undertaking of the policy under consideration was to insure against the normal hazards of a business engaged in selling and handling building materials, and did not include the operation of a storage yard for other purposes, and the loading of a shovel boom for transportation to another operation which was not connected with, incident or related to the selling or handling of building materials. That the risk was no greater than that insured against is immaterial when the frequency of the risk might have been a determining factor in the fixing of rates, assuming that even that consideration would affect the case. What is important is that the contract fixes the obligation of the parties, and it cannot be enlarged upon except by an additional contract or some act or estoppel, neither of which appears here. See, in this connection, American Mutual Liability Co. v.Lemming, 187 Ga. 378 (200 S.E. 141); American Casualty Co.
v. Fisher, 195 Ga. 136 (23 S.E.2d 395, 144 A.L.R. 533); Pettit v. Reges, 242 N.Y. 272 (151 N.E. 450); Neubeck v.
Doscher, 204 App. Div. 617 (199 N. Y. Supp. 203); Patterson v.
Courtenay Manufacturing Co., 196 S.C. 515 (14 S.E.2d 16); National Auto Insurance Co. v. Industrial Commissioners,220 Cal. 642 (32 P.2d 356); Buice v. Service Mutual Insurance Co., (Tex.Civ.App.) 90 S.W.2d 342; Stefanick v. Ocean Accident Guarantee Corp., 14 N. J. Misc. 708 (186 A. 778); Burnett v. Palmer Life Paint Co., 216 N.C. 204 (4 S.E.2d 507); Miller Brothers Construction Co. v. Maryland Casualty Co., 113 Conn. 504 (155 A. 709); Paulson v. Industrial Accident Commission, 44 Cal.App.2d, 511 (112 P.2d 710); U.S. Fidelity Guaranty Co. v. Bullard Gin Mill Co., (Tex.Civ.App.) 245 S.W. 720; Kretchmer v. Monroe Union Oil Co.,260 N.Y. 276 (183 N.E. 387). The cases of Zurich General *Page 294 Accident Liability Insurance Co. v. Ellington, 34 Ga. App. 490
(130 S.E. 220), and Hartford Accident Indemnity Co. v.Hall 36 Ga. App. 574 (137 S.E. 415), are clearly distinguishable from this case, as are Small v. Nu-GrapeCompany, 46 Ga. App. 3 (167 S.E. 607), and Small v. PublicIndemnity Co., 46 Ga. App. 308 (167 S.E. 608). The payment of the employee's wages as for operations covered by the policy could not have the effect of changing or reforming the policy when the insurance company did not receive the premiums with such notice so as to estop it. Olsnel Case, 252 Mass. 108
(147 N.E. 350); Gaines v. Traders General Insurance Co., (Tex.Civ.App.) 99 S.W.2d 984; Employers Liability Assurance Corp. v.Hunter, 184 Ga. 196 (190 S.E. 598).
The operation in which the employee was injured was clearly necessary to, connected with, incident and related to the business of the employer in "the grading of land," "street or road construction," "paving," "surfacing or resurfacing or scraping — all kinds." It follows that the court erred in affirming the award of the board. The case is reversed with the direction that the court enter up judgment against the Continental Casualty Company, and in favor of the United States Fidelity Guaranty Company.
Judgment reversed with direction. Stephens, P. J., concurs.Sutton, J., dissents.